# UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:09-CR-00117-JAJ-TJS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| SCOTT RYAN DEMUTH, | ) | |
| | ) | |
| Defendant. | ) | |

The Court conducted an arraignment pursuant to Fed. R. Cr. 5 and detention hearing pursuant to 18 United States Code § 3142(e)(f)(g) on December 20, 2009, at the United States Courthouse, Davenport, Iowa. Defendant was present by this attorney James Bryson Clements. The government was present by Assistant United States Attorney Clifford R. Cronk, III.

The Court heard extensive testimony from Federal Bureau of Investigation (FBI) Special Agent Thomas Reinwart regarding the FBI investigation into the breaking and entering of the University of Iowa Laboratory facilities in November 2005, and the nature of the damage and destruction which occurred at that facility.

Special Agent Reinwart testified about his evidence obtained in that investigation. As a result of that investigation, Special Agent Reinwart was of the belief that Defendant Scott Ryan Demuth (Demuth) was involved in activities of the Animal Liberation Front (ALF), which has apparently taken credit for the occurrence at the University of Iowa in November 2005. Demuth was described as a "like-minded individual" with other persons who have taken part in ALF activities.

The Court viewed portions of a videotape depiction of the damage inflicted at the University of Iowa during this occurrence. At least four individuals could be seen during the taping of the event. Special Agent Reinwart was of the opinion that one of these individuals had a

resemblance in terms of physique and stature with Demuth.   However, Special Agent Reinwart did not testify that he knew Demuth participated in the occurrence.

The FBI has reviewed a journal kept by Demuth, and in which he discusses activities of other persons who he identified only with a single initial.   One of the individuals discussed in that journal was identified as "P."   Special Agent Reinwart believed that Demuth was discussing an individual who had been a participant in destructive activities in 1998 or 1999, and who, after having been arrested, fled from authorities.   That individual was subsequently apprehended seven or eight years after his apparent flight to avoid prosecution when he was arrested on a simple misdemeanor charge.

This testimony was offered in support of the government's contention that Demuth poses a risk of flight to avoid prosecution.

After considering all the testimony and evidence presented, the Court orders that defendant be released on bond with conditions as follows:

1. Defendant shall execute a standard bond form which shall set forth conditions for his release, in addition to those set forth in this order.

2. Defendant shall be required to be connected at all times to a Global Positioning System (GPS) monitor. Defendant shall not remove, alter, reprogram, or in any way tamper with the monitor while on this bond.

3. Defendant shall be under home detention while on this bond, however, this requirement shall not be in effect when defendant is participating in his graduate studies at the University of Minnesota within the Minneapolis and St. Paul, Minnesota communities.   Defendant shall be required to report weekly on his graduate study schedule to the United States Probation Office, and defendant shall not be permitted to travel outside this designated area without prior approval of the United States Probation Office.

4. Defendant shall be permitted to travel between his home and Davenport, Iowa for court purposes only with advance notice to the United States Probation Office. Defendant shall not be permitted any other travel outside the Minneapolis/St. Paul, Minnesota communities without advance written request by defendant's counsel to the Court.

5. Defendant shall immediately surrender his passport to the United States Probation Office. Defendant shall not make application for a duplicate passport, or a new passport, while on this bond.

6. Defendant shall immediately surrender any and all licenses or permits for firearms that he has obtained, or for which he has made application, and these licenses and permits shall be delivered to the United States Probation Office. Defendant shall not apply for any duplicate or new firearm licenses or permits in any jurisdiction while on this bond.

7. Defendant shall not use or possess any narcotics, drugs, controlled substances or alcohol while free on this bond. Defendant may have in his possession medications prescribed for him by a licensed medical doctor.

All the foregoing conditions shall be appended to the standard bond form, which defendant shall sign after reviewing with his lawyer. In imposing these conditions, the Court believes that they do provide a combination of conditions that can ensure that defendant is not a risk of harm or danger to the community, and is not a risk of flight to avoid prosecution.

IT IS SO ORDERED.

Dated this 24th day of November, 2009.

THOMAS J. SHIELDS
CHIEF U.S. MAGISTRATE JUDGE