IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MOTION TO SUPPRESS |
| | ) | CERTAIN EVIDENCE |
| | ) | SEIZED FROM THE |
| | ) | RESIDENCE OF SCOTT |
| | ) | DEMUTH BASED ON A |
| Plaintiff, | ) | LACK OF PROBABLE CAUSE |
| | ) | AND A VIOLATION OF THE |
| | ) | PARTICULAIRITY |
| | ) | REQUIRMENTS OF THE |
| | ) | FOURTH AMENDMENT |
| | ) | |
| | ) | |
| | ) | No. 3:09-cr-0117-JAJ |
| | ) | |
| SCOTT DEMUTH. | ) | |
| | ) | |
| Defendant. | ) | |

Now comes the defendant, Scott DeMuth, by his undersigned counsel, and seeks an Order suppressing all books, pamphlets, magazines, leaflets, letters, personal diaries, journals and other writings seized from the residence of Scott DeMuth.  In support of this request the defendant states the following:

1.    On August 29, 2008, law enforcement officers from the Ramsey

County Sheriff's Department, the St. Paul Police Department and

numerous other police agencies, pursuant to a Search Warrant,

searched the residence of Scott DeMuth, at 2301 23rd Avenue, South, Minneapolis, Minnesota, which he shared with three others, including Robert Joseph Czernik and seized hundreds of documents, books, magazines, pamphlets, leaflets letters, a personal diary, journal and other writings from his bedroom.

2.   The 18 page affidavit in support of the search warrant made no mention of Scott DeMuth and made no allegations against him. Further, Mr. DeMuth was not charged with any of the criminal allegations made in the warrant or supporting affidavit.

3.   The warrant provided no probable cause to justify the search of the bedroom of Scott DeMuth at his residence. (See Exhibit 1, Search Warrant)

4.   In addition, the Warrant signed by the Honorable Mark S. Wernick, Judge of Hennepin County District Court, authorized the seizure, among numerous other items, the following:

a.   "Documents and other communication with other RNCWC (Republican National Convention Welcoming Committee) group members and individuals from affinity groups"

b.   "Documents that plan, promote and/or advocate criminal activity, rioting, damage to property"

c. "Media in whatever form, including, but not limited to, MP3 players (including but not limited to iPods), X-Box gaming systems, cellular phones and personal digital assistants (PDAs)."

d. "Notes and other documentation, including maps, charts, membership lists."

e. "Data contained on either hard drives, electronic devices or removable media and all items listed in the sections of these documents that describe the items being sought to include deleted files, archived files and email files."

f. "Data contained within any seized cellular phone, SIM card, PDA or electronic device to include, but not limited to, call logs, contacts, text messages, audio messages, images, Internet cache and deleted data."

5.   These above-enumerated sections of the warrant thus authorized the searching agents to seize thousands of written and electronic documents based on their political and First Amendment protected content without any sufficient particularity as to which ones could be seized.  This warrant constituted a general and overbroad search in violation of the Fourth Amendment.

6.      The Fourth Amendment requires that a warrant "particularly

describe the . . . things to be seized," in order to prevent general

searches and leave nothing to the discretion of the officer

executing the warrant. See, *Sandford v. Texas*, 379 U.S. 476, 485

(1965); see also, *Andresen v. Maryland*, 427 U.S. 463, 480 (1976);

*United States v. Clark*, 531 F.2d 929, 931 (8th Cir. 1976).

5.      As the Supreme Court stated in Andresen, 427 U.S. at 482  n.11:

There are grave dangers inherent in executing a warrant
authoring a search and seizure of a person's papers that are not
necessarily present in executing a warrant to search for physical
objects whose relevance is more easily ascertainable.  In
searches for papers, it is certain that some innocuous documents
will be examined, at least cursorily, in order to determine
whether they are, in fact among those papers authorized to be
seized . . . Responsible officials, including judicial officials,
must take care to assure that they are conducted in a manner
that minimizes privacy.

6.  The Supreme Court has held, that the requirement under the Fourth

Amendment that items to be seized must be described with

particularity, must be applied with "scrupulous exactitude" when

written documents are ordered to be seized based on their content.

See *Sandford*, 379 U.S. at 485 (1965) ("when the things to be seized

are books, and the basis for their seizure is the ideas they contain . . .

No less a standard could be faithful to First Amendment freedoms.");

see also, *Roaden v. Kentucky*, 413 U.S. 496, 502 (1973) ("the seizure

of instruments of a crime, such as a pistol or a knife, or contraband or stolen goods or objects dangerous in themselves, are to be distinguished from quantities of books or films when the court appraises the reasonableness of the seizure under the Fourth or Fourteenth Amendment standards."); *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 63 (1989) ("while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities and evidence of crimes may be seized on probable cause, it is otherwise when materials presumptively protected by the First Amendment are involved."); *United States v. Kelley*, 529 F.2d 1365, 1372 (8th Cir. 1976) (the seizure of materials presumptively protected by the First Amendment "demands a greater adherence to the Fourth Amendment warrant requirement.'); *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir 1988)

7.  Even documents seized for purpose of obtaining evidence of associations are also protected by the First Amendment and subject to the "scrupulous exactitude" standard. See, *United States v. Apker*, 705 F.293, 301 (8th Cir. 1983) (warrant authorizing seizure of Hell's Angels membership lists held to be violation of particularity requirement of Fourth Amendment)

8. Subsequent to its decision in *Apker*, the Eighth Circuit in a civil case seeking injunctive relief against the warrantless seizure of photographs from a photo processing store, stated that the "scrupulous exactitude" test as to First Amendment materials is limited to searches which impose the  risk of prior restraints. *Wabun-Inini v. Sessions,* 900 F.2d 1234 (8th Cir. 1990).  This limiting "prior restraint" dicta in *Wabu-Inini*  however does not apply to a warrant that authorized, in general language, the wholesale seizure, based on their content, of thousands of books, magazines, pamphlets, leaflets, diaries, journals, letters, membership lists and other written materials.

9. However, even under this limiting "prior restraint" interpretation of the "scrupulous exactitude" standard, the seizure here was a prior restraint on the defendant's right to disseminate First Amendment educational material on the political and social issues.  In fact, most of the publications and writings, many of which included multiple copies had been collected to be made available for educational purposes and to be disseminated at the Convergence Center library as well as other educational forums.

10. "A prior restraint is generally any government action that would prevent a communication from reaching the public." *United States v. Dinwiddie,* 885 F. Supp. 1286, 1298 (W.D. Mo. 1995)

11. The following parts of the warrant therefore clearly fail to particularize with "scrupulous exactitude" the seizure of First Amendment protected written materials which were authorized to be seized because of their content or to disclose protected associations.

    a.    "Documents and other communication with other RNCWC (Republican National Convention Welcoming Committee) group members and individuals from affinity groups"  The communication between the RNCWC and other groups is not in and of itself evidence of any crime, but rather is First Amendment protected speech and association. Without specifying that the documents to be seized should contain evidence of planning "imminent" criminal activity the items sought under this request under not particularized with "scrupulous exactitude."

    b.     "Documents that plan, promote and/or advocate criminal activity, rioting, damage to property"  Unless one advocates the *imminent* use of force, violence or law

violation, the future or unspecific advocacy of force, damage to property etc, is protected by the First Amendment. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).  The description of the documents here is vague, overbroad, not sufficiently particularized with "scrupulous exactitude" and is protected by the First Amendment. The general description allows for the rummaging through private papers and political writings with little direction to the searching officers.

c.    "Media in whatever form, including, but not limited to, MP3 players (including but not limited to iPods), X-Box gaming systems, cellular phones and personal digital assistants (PDAs)."  Clearly, the authorization to seize "media in whatever form" without any particularization is equivalent to an impermissible general warrant.

d.    "Notes and other documentation, including maps, charts, membership lists."  Here again there is no limiting direction or particularization, just authority to seize any notes, maps, charts and membership lists.

e.  "Data contained on either hard drives, electronic devices or removable media and all items listed in the sections of these documents that describe the items being sought to include deleted files, archived files and email files." There is no limiting or particularization of the data to be seized. Rather the searching agent can seize all and everything.

f.  "Data contained within any seized cellular phone, SIM card, PDA or electronic device to include, but not limited to, call logs, contacts, text messages, audio messages, images, Internet cache and deleted data." Again no limiting or particularization , just authority to seize everything

12.  Under the overbroad, un-particularized scope of these requests the agents seized political, writings, personal letters, books and publications of all kinds. They even seized the personal diary/journal of the defendant.  As Judge Friendly stated:

The reason why we shrink from allowing a personal diary to the object of search is that the entire diary must be read to discover whether there are incriminating entries; most of us would  feel rather differently with respect to a 'dairy' whose cover bore the title "Robberies I Have Performed."  Similarly, the abhorrence generally felt with respect to 'rummaging' through the contents of desk to find

an incriminating letter would not exist in the same measure if the letter were lying in plain view.

*United States v. Bennett*, 409 F.2d 888, 897 (2d Cir. 1969).

Here, the agents not only rummaged through all of the defendant's personal papers, books and writings, despite the fact he was not even mentioned in the warrant or in the affidavit in support, they seized them all.   Clearly, such a warrant authorizing such a seizure does not comport with the Fourth Amendment.

13.     The executing agents seized so much First Amendment material that much of it was not even provided to the prosecution in this case, but rather is retained by the Ramsey County authorities and underscores the prior restraint on the defendant's First Amendment expression.

14.     As to failure to comply with particularity requirements of the Fourth Amendment, the defendant only challenges the above enumerated sections.[1]  "A warrant that fails in this particularity requirement is invalid and evidence seized for no reason other than reliance on invalid portions of the warrant must be suppressed. However, where the warrant is invalid only in part, the warrant is severable and items seized pursuant to valid portions of the warrant need not be suppressed. *United States v. Tinsley*, 443 F.3d 615, 622 (8th Cir. 2006).

---

[1] In a separate motion to suppress the defendant challenges the entire search warrant on *Frank v. Maryland* grounds.

15.   Thus all items seized pursuant to the above-enumerated portions of the search warrant and the fruits thereof must be suppressed.

WHEREFORE, the defendant seeks an evidentiary hearing to demonstrate the overbroad and unconstitutional scope of the warrant of his residence and the resulting First Amendment materials that were seized and after such hearing an Order suppressing all such materials and the fruits thereof.

Dated:  April 6, 2010

/s/ Michael E. Deutsch
Michael E. Deutsch
Attorney at Law
1180Milwaukee
Chicago, IL 60642
773-235-0070

To: Clifford R. Cronk III
    U.S. Attorney's Office

Please take notice that, counsel for Scott DeMuth electronically filed on April 6, 2010, a **MOTION TO SUPRESS  Search of Residence for Lack of Particularity** on behalf of defendant Scott DeMuth.

/s/Michael E. Deutsch
Michael E. Deutsch
Attorney for Scott Demuth
1180 N. Milwaukee Ave.
Chicago Illinois, 60622