IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  ) Criminal No.  3:09-cr-117<br>    Plaintiff, )<br>  )<br> v. ) RESPONSE IN OPPOSITION TO<br>  ) MOTION TO SUPPRESS EVIDENCE<br> SCOTT RYAN DEMUTH, ) AND REQUEST FOR *FRANKS*<br>  ) HEARING<br>    Defendant. ) | |

The United States, by and through the United States Attorney for the Southern District of Iowa, and his Assistant United States Attorney, Clifford R. Cronk III, does hereby respond in opposition to the defendant's motion to suppress evidence requesting a *Franks* hearing.  As grounds for this opposition the undersigned state as follows:

I.   Factual Background

On August 29, 2008, three law enforcement officers from Ramsey County, Minnesota, swore to an affidavit in an application for a search warrant to issue for 2301 23rd Avenue South, Minneapolis, Minnesota.  A search warrant was issued for the residence by Judge Mark Wernieke of the Hennepin County District court which warrant identified with particularity the types of evidence that could be seized.  The affidavit is primarily single-spaced and is approximately 18 pages long.  It describes the activities of an organization called the Republican National Convention Welcoming Committee (RNCWC) and several individuals associated with it and this residence.

On August 30, 2008, at approximately 8:00 a.m., a search was executed at the residence. Defendant Scott Demuth was present and was a resident. Numerous items of incriminating evidence were found including Demuth's personal journal, his laptop computer, and written materials advocating direct action against animal enterprises and government entities.

## II.     Defendant's Motion to Suppress for Material Misstatements

Defendant claims the affidavit in support of the search warrant contains intentional or reckless misstatements of fact that are material to the determination of probable cause. Specifically, Defendant claims material facts that were omitted concerning a confidential source, "CR11 ", who had expressed a profound hatred of law enforcement and wanted to "kick some cops asses" under the guise of informing on the RNCWC and that an FBI report stated CR11 was extremely motivated and aggressive and did not fit in with the philosophy of the RNCWC. In addition, Defendant claims law enforcement should have told the judge that CR11 is a violent sociopath charged with domestic assault and that he would be rewarded with a dismissal of his criminal charges and be eligible for employment with the Ramsay County Sheriff's Office. In support of this claim, Defendant provides a document purported to be from a "Confidential Human Source (CHS) Reporting Document" written by FBI Special Agent Maureen Mazzola. Defendant also provides a copy purporting to be th "Registration of Action" for Case No. 19-K2-07-00168 relating to Christopher John Dugger showing the dismissal of a domestic assault charge that arose in 2007.

Defendant claims that in paragraphs "n" and "p" of the affidavit the affiants

describe documents received by an informant at the Convergence Center but do not inform the issuing judge that most of these could not be shown to have been authored by RNCWC members. Defendant provides a document entitled "RNC WELCOMING GUIDE", "EVERYTHING YOU NEED TO KNOW TO BE SMART AND DANGEROUS (BEFORE YOU ASK)".

Defendant claims that the affiants "falsely imply" that CR12 is reliable simply because the informant was supplied by another agency.  Defendant claims that the affiants falsely characterize CR12 as a "Confidential Reliable Informant." In support of this claim, Defendant provides a document (Exhibit 5) purported to be from a "Confidential Human Source (CHS) Reporting Document" written by a Task Force Officer and two FBI Special Agents.

Defendant claims that the affiants intentionally mischaracterize an RNCWC video depicting certain individuals wearing certain attire and engaging in specific behavior because the video is an obvious "spoof." In support of this claim, Defendant provides a transcript (Exhibit 6) of an unknown witness dated January 28, 2009, from a criminal case in the U.S. District Court for the District of Minnesota.

Defendant claims that a description of a pile of bricks in the backyard at the subject residence when there was no obvious construction project underway is false because, according to Defendant, they knew "the residents of the house intended to use the bricks to build a barbecue pit." In support of this claim, Defendant provides a report of the Intelligence Section of the Special Investigations Unit of the Ramsay County Sheriff's Department (Exhibit 8) containing a statement of a confidential reliable

informant concerning a meeting of the RNCWC held on April 23, 2008. The report states: "Nathanael said he has about 3,000 bricks at his residence, and he is thinking of building a BBQ pit."

Defendant claims that the affiants intentionally failed to inform the judge that the a subject who purchased bolt cutters, paint, and a tool to install a deadbolt had just moved into a new house, was planning to fix it up, and had also purchased ornamental metalwork. In support of this claim, Defendant provides a "Report Narrative" apparently authored by Chris Dugger (Exhibit 9) wherein he states that "Monica recently bought [a] house with some money that she received from her grandmother." Defendant also provides a print-out from the webpage of Krech Iron Works, Inc. to support this claim. (Exhibit 10)

Defendant claim that the affiants intentionally mislead the judge when they claimed the RNCWC intended to use incendiary devices during the convention. No exhibit or other evidence is offered in support of this claim.

Defendant claims the affiants failed to inform the judge that the "squat" referred to in the affidavit in relation to the Lilydale Tennis Club was not associated with persons staying at any of the subject residences. No exhibit or other evidence is offered in support of this claim.

Defendant claims the affiants mislead the issuing judge when it failed to advise him that a shotgun seen in 2301 23rd Avenue South may have been inoperable. In support of this claim, Defendant refers to Exhibit 5 purported to be from a "Confidential Human Source (CHS) Reporting Document" written by a Task Force

Officer and two FBI Special Agents stating: "The source noted an older, probably non-functioning shotgun standing up in corner at the residence.  The source surmised it was non-functioning based on the type of the people involved in the Welcoming Committee, but is uncertain if it functions or not."

Defendant claims that his motion and the exhibits included therewith provide a sufficient basis to hold an evidentiary hearing.

III.   **Government response.**

   A.   **Defendant has failed to make a sufficient showing to warrant a *Franks* hearing.**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement was knowingly and intentionally, or with the reckless disregard for the truth, included by an affiant in a search warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request. *Id*. at 155-56.  "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient." *Id*. at 171.

The requirement of a substantial preliminary showing "is not lightly met." *United States v. Wajda,* 810 F.2d 754, 759 (8th Cir. 1987) ("Defendants, however, neither offered affidavits or other statements of witnesses as to the falsity of the warrant affidavit nor have they offered proof of recklessness or deliberateness in connection with the falsehood.").  A mere  allegation standing alone, without an offer of proof in

the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing. *United States v. Mathison,* 157 F.3d 541, 548 (8th Cir. 1998) (citing *Franks,* 438 U.S. at 171).

Here, Defendant has failed to make the necessary showing to justify a *Franks* hearing. Some of the allegations do not claim a material misstatement at all. Several claims are utterly without support.

### 1. Reliability of an informant is not a *Franks* issue

Defendant claims that the police mischaracterized CR12 as a confidential reliable informant. But defendant offers no evidence that CR12 was not reliable. Nor does the affidavit contain any false implication that another agency considered CR12 reliable. It is a matter for the issuing judge to determine whether there is probable cause for the issuance of the warrant. He does that based upon a "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). That the affidavit does not list reasons for indicating the informant is reliable is not fatal to the affidavit and does not suggest an intentional misrepresentation of fact or a deliberate material omission. *See United States v. El-Amin*, 574 F. 3d 915, 924-25 (8th Cir. 2009). There are various ways to establish the reliability of a witness. The indicia of reliability can be found in "the richness and detail of a first hand observation", "statements against the penal interest of an informant typically carry considerable weight" in establishing reliability, the circumstances of personal questioning may also enhance reliability and credibility, and an informant may also be considered reliable if the information he or she supplies "is at least partially corroborated" by other sources. *United States v. Buchanan*, 574 F.3d 554,

561 -562 (8th Cir. 2009).

Defendant has made no showing that the confidential informants should not have been considered reliable. Likewise, Defendant has not shown that the affiants characterizations of the informants as reliable are deliberately false or misleading.

### 2. Defendant has not shown representation by CR11 are tainted.

Defendant's claims that CR11 is Christopher Dugger and that Dugger is unreliable. First, Defendant fails to show that CR11 is Chris Dugger. Even if he had, the "Register of Actions" presented by Defendant shows only that a Christopher Dugger was charged with Domestic Assault on April 18, 2007 and that charge was later dismissed. It does not demonstrate any impropriety on the part of the affiants. While the court record clearly shows dismissal of the charges, it does not show, nor is it fair to extrapolte, that Dugger is a violent sociopath as claimed by Defendant.[1] The record does not demonstrate the affiants knew about any charges or the reason for the initiation of the charges or the dismissal. There is no proof presented that the affiants or other law enforcement investigators had any involvement in the case being dismissed.

Defendant cites no case or authority that requires a search warrant affidavit contain information about a case that had been dismissed. It is well-established that probable cause is not defeated by a failure to inform the judge of an informant's criminal history if the informant's information is at least partly corroborated. *United States v. Williams*, 477 F. 3d 554 (8th Cir. 2007). Nor does the inclusion of this dismissal

---

[1] Defendant embellishes that the affiants knew that Dugger "'did not fit in' with the philosophy of the RNCWC." But that is not what the report says. Nor is it clear that is what the informant meant. The informant simply said Dugger did not fit in.

negate probable cause.

Defendant claims, without any support, that Dugger was rewarded with a dismissal so he could work for the Ramsay County Sheriff. Defendant's suggestion is nonsense. He suggests on the one hand that Dugger hates police and then claims he wants to work for them. There is no report, affidavit, or other reliable proof presented that there was any agreement between law enforcement and Dugger to "reward" him for providing information. This mere allegation is clearly insufficient to go behind the affidavit.

> **3.  Defendant has not shown the affiants believed the RNCWC video is a "spoof."**

Defendant claims that a video created by the RNCWC should have been specifically called a "spoof" in the search warrant affidavit. The affidavit states:

> . . . video depicts several persons dressed in "black bloc" attire with their faces covered to disguise their identity. It should be noted that "black bloc" is not a particular group, but a tactic that typically dresses in black with faces covered and have caused significant property damage and carried out acts of violence towards law enforcement in the past. During one scene, an individual . . . is seen throwing a Molotov cocktail. In another scene, the same Feldman (still dress in black bloc attire) hands a bolt cutter to another individual similarly dressed in black bloc attire. Also, Feldman also rolls a bowling ball labeled "RABL" in front of a military recruiting station. It should be noted that RABL is an acronym for an anarchist group known as the Revolutionary Anarchist Bowling League. The RABL was responsible for vandalizing military recruiting stations by throwing bowling balls through the windows. Finally, the video depicts an individual throwing rocks at persons dressed as riot police. The video ends with text that States "We're getting ready . . . What are you doing? . . . RNC 2008, St. Paul . . . pReNC Aug. 31 - Sept. 3, 2007 . . . Learn more at: RNCWelcomingCommittee.org . . . starring Robyn B . . . Made possible by the RNC Welcoming Committee." CRI2 reviewed this

>video and identified the following individuals: Garrett Fitzgerald, Scott Demuth, and Carrie Feldman. Additionally, information was received from CRI2 that Gus Ganley produced and edited the video.

Every word here is true. Of the entire passage, the only criticism the defense has is that the video was not labeled as a "spoof" by the affiants, and that the affidavit omitted that the Molotov cocktail landed in a grill, that the bolt cutters were used to trim bushes, that the RABL has not existed for ten years, and the individual throwing rocks at the police is a child with a slingshot. There is no affidavit or report presented that the police, the delegates to the Republican Convention, the City of Minneapolis, or even the RNCWC considered this video a joke. More importantly, no report, affidavit or other reliable evidence has been provided that the affiants believed it to be a spoof. The affiants' opinions on this issue, if given and considered relevant, would not support Defendant's claim. Moreover, the omission of, or the significance of, where the Molotov cocktail lands, the bolt cutters end up, or the fact that a child is using a slingshot, is minor and unimportant, in light of all the aspects of the video that Defendant concedes, by omission, are accurate:

>a. that this video was the product of the RNCWC;
>
>b. that the actors were in black bloc;
>
>c. that black bloc represents the uniform of those engaged in tactics to cause significant property damage and carry out acts of violence against law enforcement;
>
>d. that this video promotes RABL and that RABL was responsible for vandalizing military recruiting stations by throwing bowling balls through windows; and

    e.  that this video shows people throwing rocks at the police.

The video is evidence.  Nothing is misstated and nothing material is omitted. Defendant has again failed to provide the necessary information to undermine this information in the affidavit or justify its exclusion from the issue of probable cause.

  **4. Defendant's claim that the bricks at the residence were to be used to build a barbeque pit is overstated and the alleged omission insignificant.**

Defendant claims that bricks at the subject residence were to build a BBQ pit and that the affiants should have told the judge this.  This claim is based upon a statement made by Nathanael at a meeting on April 23, 2008, that Nathanel was "thinking of building a BBQ pit" with the 3,000 bricks he had piled up in his backyard. But, the bricks were there on August 29, 2008 when the affiants wrote their affidavits. There was no BBQ pit, nor was there one under construction.  Thus, the affidavit accurately states:

> [y]our affiants have observed, along with other investigators and UC1, a stack of bricks in the backyard of the abovementioned address.  It should be noted there appears to be no construction projects at the residence.

It is irrelevant, much less a "material omission," that four months prior to the swearing of the affidavit Nathanael considered building a BBQ pit.  Moreover, including this in the affidavit would not negate probable cause.

  **5. Defendant fails to show that tools purchased were for home improvement**

Defendant takes offense to the affidavit's mention of Eryn Trimmer's visit to an ironworks business and then to Home Depot to buy paint, a deadbolt, and a deadbolt tool.  The affidavit states accurately:

> On 8/22/08, Investigators from RCSO followed Trimmer to Krech Ironworks, 6163 Cahill Avenue, Inver Grove Heights, MN. Investigators observed Trimmer carry out a box. Trimmer was then observed at Home Depot where he purchased a gallon of paint, deadbolt and key hole saw.

Defendant does not deny the truth of this statement, nor could he.  Instead, he argues that the affiants should have speculated that Trimmer bought the materials for home improvement.  Yet, Defendant provides no report or affidavit from any witness that this was the purpose for the purchase of these items or a description of how they would be used.  Moreover, there is no evidence to suggest that the affiants believed this was the purpose.  The showing made here is utterly inadequate to undermine the accurate information in the search warrant.

It is absurd to suggest that the affiants committed a material omission of fact by failing to advise the judge that the ironworks business visited by Trimmer does ornamental iron fabrication.

### 6. Defendant cannot show that the affiants misrepresented, or omitted, any material fact about a firearm present at the 2301 23rd Avenue South

The affidavit states that "[i]nformation was received from CRI2 who observed a shotgun standing up in the corner of the house (no further information provided on location or functionability)." Affiant claims this is a misleading statement because CR12, information from a May 6, 2008 document states:

> [t]he source noted an older, possibly non-functioning shotgun standing up in corner at the residence.  The source surmised it was non-functioning based on the type of the people involved in the Welcoming Committee, but is uncertain if it functions or not.

Defendant claims the search warrant should have been worded differently.  He cannot

argue that the information included in the affidavit is inaccurate. The affidavit states the operability of the firearm was unknown. The informant, who the Defendant now deems to be reliable, did not know whether the gun worked. Her guess about its operability is irrelevant and certainly immaterial to the determination of probable cause. The presence of any kind of firearm, imitation or real, functioning or non-functioning, is important here. Moreover, including this information in the affidavit would not negate probable cause.

> 7. **Defendant's remaining attacks are unsupported and constitute mere allegations of impropriety, insufficient to warrant a *Franks* hearing**

Defendant provides no affidavit report or other reliable information that the affiants knew the RNCWC had "no interest in committing criminal acts." He provides no basis to support the claim that the testimony of CR12 will show that the RNCWC did not intend to use incendiary devices and the affiants knew this. He provides no report, affidavit, or reliable evidence to negate the facts about "squatters" at the Lilydale Tennis Club. The relevance of this information to probable cause is evident.

## Conclusion

Before a *Franks* hearing is granted, the defendant must make a "substantial" showing that there are important intentional misstatements of fact or deliberate and material omissions of facts, that if properly presented would negate probable cause. In many respect, Defendant has failed to make any showing. In all respects he has failed to make a substantial showing that the affiants were even negligent in the drafting of

the affidavit in support of the search warrant at issue here.

WHEREFORE, the United States respectfully requests that the court deny the motion without further hearing or argument.

                                      Respectfully Submitted,

                                      Nicholas A. Klinefeldt
                                      United States Attorney

By: /s/ _____
        Clifford R. Cronk III
        Assistant U. S. Attorney
        131 East 4th Street, Suite 310
        Davenport, IA 52801
        Tel: (563) 449-5432
        Fax: (563) 449-5433
        Email: cliff.cronk@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2010, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail  _____ Fax  _____Hand Delivery

_X_ ECF/Electronic filing  ____Other means

UNITED STATES ATTORNEY

By: /s/ _____
    Clifford R. Cronk III