IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.  3:09-cr-117 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | RESPONSE IN OPPOSITION TO |
| | ) | MOTION TO SUPPRESS BASED ON |
| SCOTT RYAN DEMUTH, | ) | LACK OF PROBABLE CAUSE AND |
| | ) | LACK OF PARTICULARITY |
| Defendant. | ) | |

The United States, by and through the United States Attorney for the Southern

District of Iowa, and his Assistant United States Attorney, Clifford R. Cronk III, does

hereby respond in opposition to the defendant's motion to suppress evidence obtained

pursuant to a search warrant based upon Defendant's claim that there was no probable

cause and the search warrant lacked sufficient particularity.

I.      **Defendant's Motion to Suppress for lack of probable cause**

Defendant asks the court to suppress "all books, pamphlets, magazines, leaflets,

letters, personal diaries, journals, or other writings" seized from his residence.  He

claims the search warrant issued to law enforcement officers in Minnesota to search his

residence was not based upon probable cause.  He claims that there is no mention of

him in the 18-page affidavit so the police should not have searched his room.[1]  He

---

[1] On page 5 of the application/affidavit, Defendant is specifically mentioned as
participating in the RNCWC video.  Furthermore, Defendant resided at the subject
residence and was present and read the search warrant aloud after the police arrived to

1

further asserts that the warrant lacked sufficient particularity to limit the seizing agents

from seizing protected materials.[2]

II.    **Government response**

A.    **The warrant for the defendant's residence was based upon probable
cause to believe the residence would have evidence of criminal activity
and authorized a search of the entire residence**

The Supreme Court has stated that "[a] lawful search of fixed premises

generally extends to the entire area in which the object of the search may be found and

is not limited by the possibility that separate acts of entry or opening may be required

to complete the search." *United States v. Ross,* 456 U.S. 798, 820-21 (1982). Thus, when

authorized by the warrant, courts have repeatedly upheld the ability of law

enforcement officers to search an entire home for items within the scope of the warrant.

For example, in *United States v. Canestri,* 518 F.2d 269, 273 (2d Cir.1975), the Second

Circuit rejected an argument that the police had exceeded the scope of a search warrant

and upheld the search of a storeroom where the warrant permitted a search of the entire

house. Specifically, the Second Circuit explained:

> The warrant directed that the entire house be searched. As the district court
> noted, to exclude the storeroom from the scope of the warrant "on the facts of
> this case, would be to suggest that the purposes of a search warrant could be
> frustrated by the mere declaration of the owner of a one-family residence that
> one of the rooms therein 'belongs' to a party not named in the warrant.... Such a

---

serve the warrant.

[2] Though Defendant has been provided a list of items that were seized, he fails to
identify with specificity which items he believes were seized in violation of the search
warrant.

result would clearly be inappropriate".

*Id.* at 273 (citation omitted).   Similarly, in *United States v. Ayers,* 924 F.2d 1468 (9th Cir. 1991), the Ninth Circuit held that "[a] search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." *Id.* at 1480 (citations omitted); *see also Shamaeizadeh v. Cunigan*, 338 F.3d 535, 553 (6th Cir. 2003) (all four occupants of the residence had access to the residence in its entirety, therefore, it was objectively reasonable for the officers to conclude that they had probable cause for a warrant to search the entire house);  *United States v. Waters,* 786 F.Supp. 1111, 1119 (N.D.N.Y.1992) (finding that agent "was justified in believing that defendant had control of the entire premises such that the subject of the search warrant could be located anywhere in the residence, outbuildings, or appurtenances thereto, and [the agent] had probable cause to search the entire premises"); *United States v. Maher,* No. 94 Cr. 606(LLS), 1995 WL 258194, at *3 (S.D.N.Y. May 2, 1995) ("Because the warrant authorized a search of the entire residence and seizure of documents identifying co-conspirators, the seizure of [defendant's] diaries and appointment books, regardless of their location or purported personal nature, was justified.").

Here, Defendant's association with the RNCWC was clear and he was present when the search commenced.  Though the search warrant focused more on Mr. Czernik as a leader in the RNCWC, the police were within their rights to search the entire house for evidence.  Thus, the search of all the rooms in the home for evidence was completely

consistent with the warrant and does not provide any basis for concluding that the
officers conducted a general search.

    **B.**    **The search warrant was sufficiently particular to provide guidance to the officers.**

        Defendant argues that the search warrant was overbroad and lacked
particularity because it allowed police to seize materials protected by the First
Amendment; namely, evidence of association.  The First Amendment to the United
States Constitution states, "Congress shall make no law ... abridging the freedom of
speech. . . ." The freedom of speech provided under the First Amendment is a broad,
but not absolute freedom.  *United States v. Buttorff,*  572 F.2d 619, 623 (8th Cir. 1978)
(citing *Whitney v. California,* 274 U.S. 357, 373 (1927) (Brandies, J., concurring)).
"[A]dvocacy of imminent lawless action,"is not protected by the First Amendment,
*Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969), nor are"threats" of violence. *Watts v.
United States,* 394 U.S. 705, 707 (1969).  Items whose content is protected by the First
Amendment may nevertheless be the proper subject of a search when those items tend
to prove conspirators' associations with each other.  *United States v. Rubio,* 727 F.2d 786,
791 -792 (9th Cir. 1983) (approving search for indicia of association with Hell's Angels
motorcycle club).  "Where [a search] warrant authorizes seizure of materials protected
by the [F]irst [A]mendment, the requirements of the Fourth Amendment must be
applied with scrupulous exactitude." *United States v. Frederickson,* 846 F.2d 517, 519 (8th
Cir.1988) (internal quotation omitted).  "The requirement of particularity must be
assessed in terms of practicality." *United States v. Summage (Summage I),* 481 F. 3d 1075,

1079 (8th Cir. 2007).  Particularity is satisfied when the warrant describes material sought in the terms of the crimes involved.  *See United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir. 2002).

Where a precise description of items cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice.  *United States v. Porter*, 831 F.2d 760, 764 (8th Cir.1987) (quoting *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976).  Moreover, it is reasonable to allow police to seize items potentially containing the relevant materials even though some of the seized material might be protected by the First Amendment, particularly since "it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items." *Summage I* at 1079; *see also United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images.").

Here, the search warrant was not overbroad or lacking in particularity.  It provided for the search and seizure of "manuals, books and/or instructions for the construction of caltrops, tripods, Molotov cocktails, bombs, and other direct action techniques", "documents that plan, promote and/or advocate criminal activity, rioting, damage to property", "documents and other communication with other RNCWC groups members and individuals from affinity groups" and computers and electronic media.  The affidavit in support of the search warrant identified how these items are

5

evidence of the crimes being investigated and the reasons to believe they would be found in the residence at issue.  Of course,  rarely is there the ability to know "the exact nature of the format in which the sought-for evidence was created or stored" so, "it was necessary to search a broad array of items for the relevant materials."  *See United States v. Summage (Suumage I),* 481 F. 3d 1075, 1079 (8th Cir. 2007).  Because the items listed do not involve protected speech, the search warrant did not violate the First Amendment.  *See United States v. Summage (Summage II)*, 575 F.3d 864, 871 -872 (8th Cir. 2009).

### C.    Total suppression is not the remedy for an overbroad search

It is well-settled that unlawful seizure of items outside a warrant does not alone render the whole search invalid and require suppression and return of all documents seized, including those lawfully taken pursuant to the warrant.  *Marvin v. United States*, 732 F.2d 669, 674 (8th Cir. 1984); *Andresen v. Maryland*, 427 U.S. 463, 482 n. 11 (1976)("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.").  Therefore, even if the agents took more than was authorized by the warrant, only those items that exceeded the scope of the warrant should be suppressed.[3]

Here, Defendant claims that items seized under the specified headings exceeded

---

[3] Officers seized Defendant's personal journal which contains incriminating entries.  Even if the court determines that the journal was not a listed item, it was still seized properly under the plain view doctrine as the police were authorized to examine it and then found the information.  *See United States v. Isaacs*, 708 F. 2d 1365, 1368-69 (9th Cir. 1983)(police authorized to go through ledgers found in plain view).

the scope of the warrant - he fails to specify the items he believes fall under that category.  If the court should find that any specific items falls outside the description in the warrant, then only those items should be suppressed.

>           **D.    The Good Faith exception applies here.**

>           Not every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant. *See Herring v. United States,* --- U.S. ----, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009). "[T]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans,* 514 U.S. 1, 10 (1995). Rather, exclusion of evidence is "a judicially created rule ... 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Herring,* 129 S.Ct. at 699 (quoting *United States v. Calandra,* 414 U.S. 338, 348 (1974)). "Indeed, exclusion has always been our last resort, not our first impulse, and [Supreme Court] precedents establish important principles that constrain application of the exclusionary rule." *Id.* at 700 (internal citations and quotation marks omitted).

As a judicially-created remedy, the exclusionary rule applies only where "its remedial objectives are thought most efficaciously served." *Evans,* 514 U.S. at 11.  The exclusionary rule is not an individual right, but it "applies only where it 'results in appreciable deterrence.' " *Herring,* 129 S.Ct. at 700 (quoting *United States v. Leon,* 468 U.S. 897, 909 (1984)(some internal marks omitted).  The Court also balances the benefits of deterrence against the costs of excluding the evidence, particularly the social costs of

"letting guilty and possibly dangerous defendants go free-something that 'offends basic concepts of the criminal justice system.' " *Herring,* 129 S.Ct. at 701 (quoting *Leon,* 468 U.S. at 908).  Finally, the Supreme Court includes "an assessment of the flagrancy of the police misconduct" in its calculus of whether the exclusionary rule should be applied. *Id.* (internal marks omitted).

Here, the warrant included an explicit list of items to be seized. The issuing judge signed both the warrant and the affidavit, demonstrating both that the judge approved the search with reference to the affidavit and that the judge had the opportunity to limit the scope of the search. Given our Eighth Circuit caselaw, it was objectively reasonable for the searching officers with their knowledge and involvement in the warrant application process, to rely on the warrant, even if the court now concludes that the list of items to be seized is less than clear.  This court "cannot say that [the] warrant was so facially deficient that the executing officers could not reasonably have presumed it to authorize" seizure of the items they seized. *United States v. Watson,* 498 F.3d 429, 433 (6th Cir. 2007) (internal marks and citations omitted)

In the Supreme Court's most recent discussion of the exclusionary rule in *Herring,* the Court noted that "the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional." 129 S.Ct. at 702. The Court distinguished past cases from the type of error involved in *Herring,* which it characterized as "[a]n error that arises from nonrecurring and attenuated negligence," concluding that "the exclusionary rule serves to deter deliberate, reckless, or grossly

negligent conduct, or in some circumstances recurring or systemic negligence." *Id*. Here, the seizing officer's conduct, if found to be improper, cannot be construed as more than nonrecurring negligence. This is not the type of case for which the deterrent effect of excluding evidence outweighs the social costs of "letting guilty and possibly dangerous defendants go free-something that 'offends basic concepts of the criminal justice system.' " *Herring,* 129 S.Ct. at 701 (quoting *Leon,* 468 U.S. at 908, 104 S.Ct. 3405); *see also Watson,* 498 F.3d at 434 (holding that suppression of evidence would not deter police conduct "that can be characterized as a minor, unintentional drafting oversight," unnoticed by either the drafting officer or the issuing judicial commissioner).

Even if the warrant in this case failed to meet the particularity requirement of the Fourth Amendment's Warrant Clause, the seizing officer's actions were objectively reasonable in believing that the warrant and its reference to the affidavit authorized the seizure of the items removed from Defendant's residence on August 30, 2008. *See United States v. Hamilton*, 591 F.3d 1017, 1027 -1030 (8th Cir. 2010).

## Conclusion

The search warrant was sufficiently particular to satisfy the Fourth Amendment. The warrant properly authorized the agents to search the entire residence. Items seized during the search were items listed or their evidentiary value was apparent. The seizing agents acted in good faith reliance on the search warrant and that reliance was objectively reasonable. Therefore, suppression of the evidence is unwarranted.

WHEREFORE, the United States respectfully requests that the court deny the motion without further hearing or argument.

Respectfully Submitted,

Nicholas A. Klinefeldt
United States Attorney

By:  /s/_____
Clifford R. Cronk III
Assistant U. S. Attorney
131 East 4th Street, Suite 310
Davenport,  IA 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: cliff.cronk@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on  May 4, 2010, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

\_\_\_\_U.S. Mail _____ Fax \_\_\_\_\_Hand Delivery

 X \_\_\_ECF/Electronic filing   \_\_\_\_Other means

UNITED STATES ATTORNEY

By: /s/_____
Clifford R. Cronk III