IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.  3:09-cr-117 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | RESPONSE IN OPPOSITION TO |
| | ) | MOTION TO SUPPRESS EVIDENCE |
| SCOTT RYAN DEMUTH, | ) | SEIZED FROM A COMPUTER |
| | ) | |
| Defendant. | ) | |

The United States, by and through the United States Attorney for the Southern District of Iowa, and his Assistant United States Attorney, Clifford R. Cronk III, does hereby respond in opposition to the defendant's motion to suppress evidence obtained pursuant to a search warrant to search Defendant's computer.

**I. Factual Background**

On August 30, 2008, law enforcement officers in Ramsay County, Minnesota obtained a search warrant for the residence of Robert Czernik in Minneapolis, Minnesota.  Mr. Czernik resided there with others, including Defendant Scott Demuth. The search warrant authorized the seizure of computers found there and authorized a search of those computers relating to illegal efforts to disrupt the Republican National Convention in Minneapolis.  The computer was seized temporarily and the police made a mirror-image of the computer's storage/ hard drive, returning the computer.

In October of 2009, Joint Terrorism Task Force Officer Melissa Henderson applied for a search warrant to search the imaged hard-drive for evidence of

1

Defendant's involvement in animal enterprise terrorism. The affidavit was executed before Chief U.S. Magistrate Judge Thomas J. Shields who then issued the search warrant.  Evidence connecting Defendant to animal enterprise terrorism was found.

II.  **Defendant's Motion to Suppress search of computer based upon a lack of probable cause**

Defendant asks the court to suppress "all evidence seized from the computer." He claims the affidavit fails to state probable cause to believe evidence of crime would be found on the computer. Defendant claims the search warrant contains "false and recklessly misleading information, and omits material information."  Specifically, he claims the affiant mislead the court about her knowledge of an earlier search of the hard drive of the computer by state officers, that she intentionally mis-characterized a video released by the RNCWC because she failed to tell the magistrate that the video is a "spoof of stereotypes of anti-authoritarian protestors," and fails to give a complete description about the ultimate use of a Molotov cocktail, a pair of bolt cutters, and the demise of the RABL.  Defendant claims any reference to his animal rights extremism is forbidden because he has a First Amendment right to be an animal rights extremist.  He claims that some information relied upon to get the search warrant was obtained illegally and that the computer search is the fruit of a prior illegal search of his home.

III.  **Government response**

  A.  **The warrant for the defendant's computer was based upon probable cause to believe it contains evidence of animal enterprise terrorism.**

Probable cause to search exists if, considering a totality of the circumstances,

2

"there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983).  In *Illinois v. Gates*, at 238, the Supreme Court stated:

> "A magistrate's "determination of probable cause should be paid great deference by reviewing courts." (citation omitted) "A grudging or negative attitude by reviewing courts toward warrants," (citation omitted) is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant "courts should not invalidate ... warrant[s] by interpreting affidavit [s] in a hypertechnical, rather than a commonsense, manner.  (citation omitted).

In *Texas v. Brown,* 460 U.S. 730 (1983) the Supreme Court held:

> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," (citations omitted), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. (citations omitted). Moreover, our observation in *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is equally applicable to the probable cause requirement:  "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Id*. at 742.

Here, the information in the affidavit articulates a fair probability that the computer will contain information about animal enterprise terrorism.  It identifies Defendant as an animal rights extremist, it recites information from his journal that implicates him in the break-in at the University of Iowa, it demonstrates a connection

between Defendant and another animal enterprise terrorist Peter Young, and his friend, Kelly Higgins, who traveled to Minnesota very near the time of the break-in. It provides that the break-in at the University of Iowa was conducted by a group of people, one of whom matches the general build of the defendant. It establishes that Defendant has a computer that he uses to espouse his extremist views publicly. The affidavit demonstrates that Defendant has engaged in illegal activities to disrupt business operations of a particular business in Minnesota he opposes. The affidavit clearly establishes probable cause to believe evidence would be found on the mirror-imaged, computer hard-drive from Defendant's computer.

> B.   **There is no basis in the law to exclude from the affidavit reference to Defendant's animal rights extremism.**

Defendant claims "the affidavit improperly relies on the political beliefs of Mr. DeMuth" and Carrie Feldman and their "interest in the `animal rights extremist movement.'" Not surprisingly, he cites no authority for this proposition.

When activity protected by the First Amendment becomes the subject of a criminal investigation, the protections afforded by the Fourth Amendment come into play. *United States v. Rubio*, 727 F. 2d 786 (9th Cir. 1983). As the Supreme Court said in *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978):

> "Properly administered, the preconditions for a warrant-probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness-should afford sufficient protection against the harms that are assertedly threatened . . . ."

Items whose content is protected by the First Amendment may nevertheless be the

proper subject of a search when those items tend to prove conspirators' associations with each other. *Rubio*, at 791-92. The Eighth Circuit has held that proof of association with a political organization is admissible in a conspiracy trial to show the association of defendants with each other. *United States v. Baumgarten*, 517 F.2d 1020, 1029 (8th Cir. 1975) (evidence concerning the history of Students for a Democratic Society relevant and admissible to show the association of defendants with one another); *see also United States v. Apker*, 705 F.2d 293, 298 (8th Cir. 1983).

Thus, there is no basis to exclude evidence of Demuth's animal rights extremist views and associations from the affidavit as such evidence are relevant.

    **C.**    **Allegations of recklessness or falsity in the affidavit need not be addressed as Defendant has not made the necessary substantial preliminary showing required by law**

Defendant makes numerous allegations against the affiant's veracity. He claims her statements are intentionally false or reckless and that she deliberately omitted material information from the affidavit. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement was knowingly and intentionally, or with the reckless disregard for the truth, included by an affiant in a search warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request. *Id*. at 155-56. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are

insufficient." *Id*. at 171.

The requirement of a substantial preliminary showing "is not lightly met." *United States v. Wajda,* 810 F.2d 754, 759 (8th Cir. 1987) ("Defendants, however, neither offered affidavits or other statements of witnesses as to the falsity of the warrant affidavit nor have they offered proof of recklessness or deliberateness in connection with the falsehood."). A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing. *United States v. Mathison,* 157 F.3d 541, 548 (8th Cir. 1998) (citing *Franks,* 438 U.S. at 171).

Here, Defendant has failed to make the showing necessary to justify a *Franks* hearing. He offers only an excerpt of a transcript purported to be the stated opinion of a law enforcement officer regarding a Molotov cocktail depicted in the RNCWC video. This excerpt addresses only one aspect of the affidavit and is woefully inadequate. Therefore, no statements should be excluded from, nor should the opinions of others concerning the RNCWC video be added to, the affidavit.

### D. The Good Faith exception applies to validate the search

Not every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant. *See Herring v. United States,* --- U.S. ----, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009). "[T]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans,* 514 U.S. 1, 10 (1995). Rather, exclusion of evidence is "a

judicially created rule ... 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Herring,* 129 S.Ct. at 699 (quoting *United States v. Calandra,* 414 U.S. 338, 348 (1974)). "Indeed, exclusion has always been our last resort, not our first impulse, and [Supreme Court] precedents establish important principles that constrain application of the exclusionary rule." *Id.* at 700 (internal citations and quotation marks omitted).

As a judicially-created remedy, the exclusionary rule applies only where "its remedial objectives are thought most efficaciously served." *Evans,* 514 U.S. at 11.  The exclusionary rule is not an individual right, but it "applies only where it 'results in appreciable deterrence.' " *Herring,* 129 S.Ct. at 700 (quoting *United States v. Leon,* 468 U.S. 897, 909 (1984)(some internal marks omitted).  The Court also balances the benefits of deterrence against the costs of excluding the evidence, particularly the social costs of "letting guilty and possibly dangerous defendants go free-something that 'offends basic concepts of the criminal justice system.' " *Herring,* 129 S.Ct. at 701 (quoting *Leon,* 468 U.S. at 908).  Finally, the Supreme Court includes "an assessment of the flagrancy of the police misconduct" in its calculus of whether the exclusionary rule should be applied. *Id.* (internal marks omitted).

Here, the agents sought to search a mirror-imaged hard-drive of the  defendant's computer.  Task Force Officer Henderson swore to the information contained in her application for the search warrant.  The magistrate reviewed and approved the warrant.  The agents then relied in good faith upon the warrant before conducting any search of

the hard-drive. That reliance was objectively reasonable. Even if this court finds some flaw in the affidavit or the warrant, the remedial objectives of the exclusionary rule would not be "efficaciously served" by suppression of this evidence.

## Conclusion

The affidavit in support of the search warrant states probable cause to support the search warrant. There is no showing that justifies going behind the affidavit to challenge the veracity of the affiant. The seizing agents acted in good faith reliance on the search warrant and that reliance was objectively reasonable. Therefore, suppression of the evidence discovered during the search of the computer hard-drive is unwarranted.

WHEREFORE, the United States respectfully requests that the court deny the motion without further hearing or argument.

    Respectfully Submitted,

    Nicholas A. Klinefeldt
    United States Attorney

By: /s/
    Clifford R. Cronk III
    Assistant U. S. Attorney
    131 East 4th Street, Suite 310
    Davenport, IA 52801
    Tel: (563) 449-5432
    Fax: (563) 449-5433
    Email: cliff.cronk@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2010, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

\_\_\_U.S. Mail \_\_\_\_\_ Fax \_\_\_\_Hand Delivery

 X   ECF/Electronic filing    \_\_\_Other means

UNITED STATES ATTORNEY

By: /s/
      Clifford R. Cronk III