IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 3:09-cr- 117 | |
| ) | | |
| Plaintiff, ) | **REPLY TO** GOVERNMENT'S | |
| ) | OPPOSITION TO MOTION | |
| v. ) | TO SUPPRESS BASED ON | |
| ) | LACK OF PARTICULARITY | |
| SCOTT DEMUTH ) | | |
| ) | | |
| Defendant. ) | | |

Now comes the defendant, Scott DeMuth, and submits the following reply to the

government's opposition to his motion to suppress based on a violation of the

particularity and probable cause requirements of the Fourth Amendment.

## I. THE SEARCH WARRANT FAILED TO PROPERLY PARTICUALRIZE THE FIRST AMENDMENT ITEMS TO BE SEIZED

Pursuant to a Search Warrant which was drafted and executed by Officers of the

Ramsey County Sheriff's Department, literally thousands of pages of books, magazines

pamphlets, leaflets, letters, personal diaries, journals and other writings, and his computer

containing First Amendment writings and communication, were seized from the bedroom

of the residence of Scott DeMuth.  The defendant seeks the suppression of all these First

Amendment protected materials as the Search Warrant under which they were seized

violated the probable cause and particularity requirements of the Fourth Amendment.[1]

---

[1] The government which has refused to specify the items which it intends to introduce in its case-in-chief
as required by Rule 12, F. R. Crim. Pro., now complains that the defendant "fails to identify with
specificity which items he believes were seized in violation for the search warrant." G. Response f.n. 2.

The government's opposition concedes that the particularity requirements of the Fourth Amendment must be applied with "scrupulous exactitude," to a search warrant authorizing the seizure of materials protected by the First Amendment.  (Govt. Response at p. 4).   The government argues however, that because the items listed in the search warrant "do not involve protected speech; the search warrant did not violate the First Amendment."  (Govt. Response at p. 6.)

The materials to be seized listed in the Search Warrant, as specified in the defendant's motion at paragraph 4 (a-f) and paragraph 11 (a-f), clearly seek writings protected by the First Amendment.  Included in the materials authorized by the Search warrant are communications between members of the RNCWC and other political groups. The search warrant does not authorize the seizure limited to communications which contain the planning of criminal activity, but authorizes the seizure of all documents and other communications between the RNCWC and other political groups. Clearly, much of such communications and documents come under the protection of the First Amendment.

Similarly, the warrant seeks documents which "advocate" criminal activity without specifying "imminent lawless action" which is required by the First Amendment. See, *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).   The RNCWC and other political groups involving in planning protests at the Republican National Convention were not designated criminal enterprises, like the mafia or other racketeering organizations. While some of these groups' members or affiliates may have been involved with planning acts

---

This type of improper gamesmanship has been typical of the government's behavior throughout this litigation.  The first paragraph of the defendant's motion requests that this Court suppress "all books, pamphlets, magazines leaflets, letters, personal diaries, journals and other writings seized from the residence of Scott DeMuth."

of civil disobedience or other disruptions, many of its members and affiliates were involved in and planning peaceful demonstrations and protests protected by the First Amendment. Certainly, the Fourth Amendment does not give law enforcement, without providing particularized justification, *carte blanche* to enter someone's home and seize all their political literature and writings.

Further, the warrant authorizes the seizure of all "media in whatever form," "membership lists," "data contained on either hard drives, electronic devices or removable media," and "data contained within any seized cellular phone, SIM card or electronic device." Clearly, all of these broad categories of items to be seized without particularization would obviously, and did in fact, result in the seizure of thousands of pages of documents protected by the First Amendment.[2]

In the face of this clearly un-particularized and overbroad request, which encompassed thousands of First Amendment protected documents, the government argues that because the exact nature of the format in which the evidence sought was created and stored, it was necessary to search a broad array of items for the relevant materials. (See Govt. Response at p.6.) But such an argument flies in the face of the "scrupulous exactitude" particularity requirements of the Fourth Amendment, See *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988); *United States v. Apker*, 705 F.2d 293, 301 (8th Cir 1983), and is belied by the parts of the search warrant that properly specify and particularize items to be seized including manuals, books etc., which contain instructions for making criminal devices like Molotov cocktails and bombs. Certainly,

---

[2] Contrary to the misdirection attempted by the government's response, the defendant does not challenge the part of the search warrant that specifies and particularizes the seizure of "manuals, books and/or instructions for the construction of caltrops, tripods, Molotov cocktails, bombs, and other direction action techniques." See G. Response at p. 5

the search warrant could have specified the types of books or other writings to be seized without allowing for the wholesale indiscriminate seizure of First Amendment protected materials.  In the context of the searches here, which is directed at the residence of political activists filled with political literature and writings there is a clear mandate for the Warrant to describe with specificity and particularity the First Amendment items for which there is probable cause to seize.

A search warrant which arguably authorized the police to enter the defendant's bedroom and seize all of his writings, books, media documents, other political materials, and his computer without any specification, can not be justified under the theory advanced by the government; that such a massive seizure of thousands of pages of writings is less intrusive than to perform a limited on-site review based on particularized directives in a search warrant.  Nor is this a case in which the warrant fails because a precise description of items cannot be ascertained as in stolen goods or fruits of criminal activity. See e.g. *United States v. Porter*, 831 F.2d 760, 764 (8th Cir 1987).  Here, we have a warrant drafted by police officers that were well aware of the First Amendment activities of the residents of the home to be searched and the political materials likely to found there. Yet they drafted a search warrant that allowed them to rummage through these books and other writings and seize anything and everything they wanted.

## II. THE DEFENDANT ONLY SEEKS SUPPRESSION OF THE ITEMS SEIZED PURSUANT TO THE INVLAID PART OF THE SEARCH WARRANT OR SEIZED BEYOND THE AUTHORIZATION OF THE SEARCH WARRANT

Apparently, sensing the weakness of his argument in support of the constitutionality of the search warrant as a whole, the government posits several fall back

arguments.  First, it argues that total suppression is not the remedy for an overbroad search, claiming that the seizure of items outside a warrant does not render the whole search invalid and require the suppression of all items seized.  Whether the items were improperly seized as outside the scope of the un-particularized warrant – i.e., the personal journal of Mr. DeMuth – or the warrant itself failed to particularize the First Amendment items which could be seized, the defendant agrees that this does not render the entire search invalid and require the suppression of all items seized.  The defendant asserts that the warrant here was invalid only as it relates to the un-particularized First Amendment items seized and the warrant is severable and the items seized pursuant to valid portions of the warrant need not be suppressed.  See, *United States v. Tinsley*, 443 F.3d 615, 622 (8th Cir. 2006).

### A.  The Private Journal of Scott DeMuth Was Not Authorized to be Seized by the Terms of the Search Warrant and Was Not Properly Seized Under the Plain View Doctrine.

The items authorized to be seized by the terms of the search warrant do not provide for the seizure of the defendant's personal journals.  Even under the overbroad and un-particularized search warrant there is no interpretation of the warrant that would authorize the seizure of the defendant's private/personal journal which has absolutely nothing to do with the criminal allegations contained in the affidavit filed in support of the search warrant.  Faced with the reality that the seizure of the defendant's personal journal was not only a product of a failure to particularize the warrant with "scrupulous exactitude," but that such seizure was even outside the parameters of the warrant itself,

the government argues that the seizure of the defendant's journal was justified under the "plain view doctrine." See Govt. Response f.n. 3.

The "plain view" doctrine however does not apply to the seizure of Mr. DeMuth's journal. First there is no plausible argument, and the government puts forth none, that under the terms of the search warrant there was specific authorization to seize and read through the private journals of Scott Demuth. The search warrant and supporting affidavit does not mention private journals, nor, other than a mention that Scott DeMuth allegedly appears in a RNCWC video, is there any allegation in the search warrant affidavit that Mr. DeMuth was involved in any criminal activity.

Sensing the complete lack of authorization by the warrant to read through Mr. DeMuth's journal, the government puts forth as a fall back position that the journal could be read and seized since it was found in "plain view." The "plain view" doctrine however, requires that the "incriminating character" of the object seized in plain view must be "immediately apparent." See, *Minnesota v. Dickerson*, 508 U.S. 366, 374 (1993); see also, *United States v. Hatten*, 68 F.2d 257 (8th Cir 1995); *United States v. Hughes*, 940 F.2d 1125 (8th Cir 1991). This Circuit has interpreted the immediate apparent incriminating nature limitation on the plain view doctrine to require that there is probable cause to associate the item in "plain view" with criminal activity – i.e., that the facts available to a reasonably cautious man would warrant that the item in plain view may be contraband or stolen property or useful as evidence of a crime. See, *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990); United *States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997).

Here, the "incriminating character' of the private journal taken from the desk in the defendant's bedroom (and not even in plain view), could not have been "immediately apparent" under any reasonable theory.   The alleged incriminating contents, which the government seeks to introduce in this case, only could have been discovered after a careful reading of the journal contents, which was filled with highly personal reflections, and was not in anyway related to the criminal allegations and subject matter of the search authorized by the warrant.   There is nothing incriminating in the seized journal which was related to the allegations contained in the affidavit or search warrant concerning the activities of the RNCWC or activities directed at the Republican national Convention.

The 9th Circuit case relied upon by the government to argue the "plain view" doctrine, *United States v. Isaacs*, 708 F. 2d 1365 (9th Cir 1983), provides no support for the government's argument.   In *Isaacs* the district court found "that no more than a glance [at the ledger book] was necessary to ascertain the incriminating nature of the notations" as evidence of drug transactions. *Id* at 1369.

The 9th Circuit in *Isaacs* while upholding the seizure of the ledger, made it clear that the seizing agent must have a reasonable suspicion that the discovered evidence item is evidence, and that after a "brief perusal," of the book the agent  must have "probable cause to believe that the book contains evidence." *Id* at 1369.   In carefully limiting the scope of its ruling the 9th Circuit stated, "[w]e do not mean to suggest that agents entitled to examine a book or similar item may minutely scrutinize its contents especially when nonbusiness papers are involved. *Id.*

In this case, there was nothing about the journal that would have created "reasonable suspicion" that it was evidence, and beyond that, a "mere glance" or "brief

perusal" would not have established probable cause that it constituted evidence of the crimes that the search warrant authorized to search for. In fact that was nothing in the journal that had anything to do with the activities of the RNCWC or disruption of the Convention. Clearly, as required by the Supreme Court and this Circuit, the "incriminating character" of the journal, even assuming it was found in plain view and not in defendant's desk, was not "immediately apparent."

Since there was no authorization pursuant to the search warrant to seize the defendant's journal and since the journal seizure does not come under the "plain view doctrine" the journal must be suppressed.

### III. NEITHER THE DEFENDANT'S JOURNAL NOR THE OTHER FIRST AMENDMENT DOCUMENTS SEIZED FRON HIS BEDROOM ARE ADMISSIBLE UNDER THE GOOD FAITH EXCEPTION.

Given the failure of the Search Warrant to particularize with "scrupulous exactitude," the First Amendment items to be seized and the seizure of the defendant's journal which was outside the scope of the warrant, the prosecutor raises the good faith exception to try and save the evidence illegally seized by the search. First, the defendant asserts that the seizure of his personal journal was not authorized by the search warrant and therefore the seizing officer was not acting in good-faith reliance on the warrant when he seized the journal. Under these circumstances the good faith exception which allows in certain circumstances for evidence seized pursuant to a search warrant lacking probable cause to still be admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable. See *United States v. Leon*, 468 U.S. 897, 922 (1984), does not apply to Mr. DeMuth's journal. Since the executing officer could not have been relying on the search warrant when he seized the defendant's private journal because the

search warrant did not authorize such seizure the *Leon* good-faith exception is not applicable as to the journal.

Beyond that, if the executing authorities did rely on the search warrant even though it failed to properly particularize the first amendment items to be seized, a good faith exception might under specific limited circumstances apply. However, as the Second Circuit has stated, "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996).

The government's response quotes at length the Supreme Court opinion in Herring v. United States, ----U.S. -----, 129 S. Ct. 695, 700 (2009), in support of his argument that no matter how defective the warrant the good faith exception should apply. Significantly, however, as one Circuit Court pointed out in a case in which the warrant failed to set out specifically the items to be seized, "[t]he Supreme Court's decision in *Groh v. Ramirez*, 540 U.S. 551 (2004), rather than its more recent, but less on point case, decision in Herring v. United States, ____U.S. _____(2009) controls." *United States v. Lazar*, 2010 FED App. 0123P (6th Cir 2010).

The Court in *Lazar*, finding that the items to be seized were not set forth with particularity in the warrant, held that the good faith exception in *Leon* did not apply. Quoting from *Groh*, the Court stated that, "[a] warrant may be so fatally deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.' This is such a case. Groh, 540 U.S. at 565" In distinguishing its case from *Herring* the Court in *Lazar* stated, "This case does not involve the sort of police error or misconduct present in *Herring*. Like

Groh, it instead deals with particularization of search warrants and whether they are facially deficient. Despite the government's argument to the contrary, *Herring* does not purport to alter that aspect of the exclusionary rule that applies to warrants that are facially deficient *ab intio*." See also, *Leon*, 468 U.S. at 923.

In this case, as in *Lazar*, the defendant claims that the warrant so clearly failed to particularize with "scrupulous exactitude" the First Amendment items to be seized that the executing officers could not have reasonably presumed it to be valid to seize without any discernment all the First Amendment protected items .

In addition to the particularization limitation to the good faith exception, the *Leon* Court also recognized that when the affidavit supporting the warrant contained a false statement made knowingly or intentionally or with reckless disregard for its truth, thus misleading the issuing judge, the executing officers reliance on the search warrant is not objectively reasonable and the good faith exception does not apply. *Id.* at 923.

In this case, the defendant has filed a motion under *Franks v. Delaware*, in which it specifies numerous claims of intentionally false statements or those made with reckless disregard for the truth made to the authorizing judge by the affiants. (See Motion to Dismiss under *Franks v. Delaware* and Reply to the Government's Opposition to the Motion) Under this motion for which an evidentiary hearing is requested and required, defendant intends to show that the very same seizing agents who would be claiming good faith reliance on a defective warrant, knowingly provided the judge with false information and knowingly drafted an affidavit which improperly failed to particularize First Amendment documents it intended to seize. Under these circumstances *Leon* does not authorize the invocation of the good faith exception to the Fourth Amendment.

WHEREFORE, the defendant seeks:

1.      The suppression of his private journal, which was beyond the scope and not

authorized by the Search Warrant, and alternatively was not properly

particularized as required by the Fourth Amendment,

2.      The suppression of all books, magazines pamphlets, leaflets and other writings

seized from the bedroom of the defendant, including those items contained on

his seized computer, which were not properly described with "scrupulous

exactitude" as required by the Fourth Amendment,

3.      An evidentiary hearing to establish the nature and scope of the First

Amendment seizures, the lack of particularity and the lack of objective good

faith reliance on the Search Warrant by the seizing agents.

4.      The defendant also request oral argument on this motion as the matters raised

therein are of critical importance to the fair trial rights of the defendant.

Respectfully submitted,

Dated:  May 10, 2010                                  /s/ Michael E. Deutsch
                                                      Michael E. Deutsch
                                                      Attorney at Law
                                                      1180Milwaukee
                                                      Chicago, IL 60642
                                                      773-235-0070

To: Clifford R. Cronk III
    U.S. Attorney's Office

        Please take notice that, counsel for Scott DeMuth electronically filed on May 10,
2010, a Reply to the Government's Response to Motion to Suppress for Lack of
Particularity and Probable Cause.

/s/Michael E. Deutsch
Michael E. Deutsch
Attorney for Scott DeMuth
1180 N. Milwaukee Ave.
Chicago Illinois, 60622