IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>vs.<br><br>SCOTT RYAN DEMUTH,<br><br>　　Defendant. | No. 3:09-cr-00117-JAJ<br><br><br><br>**ORDER** |

　　Defendant Scott Ryan Demuth ("Demuth") moves to suppress all books, pamphlets, magazines, leaflets, letters, personal diaries, journals, and other writings seized from his residence pursuant to a search warrant, arguing that the warrant was both unsupported by probable cause and overbroad in scope [Dkt. 86]. He seeks an evidentiary hearing to demonstrate the overbreadth of the warrant, to establish that the items seized are protected by the First Amendment, and to establish the lack of objective good faith reliance on the search warrant by the seizing agents. He does not ask for an evidentiary hearing on the issue of probable cause.

## I. FACTUAL BACKGROUND

　　On August 29 or 30, 2008, law enforcement officers searched the residence of Scott Demuth at 2301 23rd Avenue South in Minneapolis. Demuth shared the residence with three others, including Robert Joseph Czernik. The affidavit in support of the search warrant mentions Demuth only in connection with participation in a Republican National Committee Welcoming Committee ("RNCWC") video; Czernik, not Demuth, was clearly the target of the investigation. The search warrant authorized the seizure of, among other things:

　　- Documents that plan, promote and/or advocate criminal activity, rioting,
　　damage to property

　　- Documents and other communication with other RNCWC group members

and individuals from affinity groups

- Media in whatever form, including, but not limited to, magnetic (such as floppy disks, hard drives and magnetic tape), flash (such as media cards and USB thumb drives) or optical (such as compact disks and digital video disks)

- Electronic devices, including but not limited to, MP3 players (including, but not limited to iPods), X-Box gaming systems, cellular phones and personal digital assistants (PDAs)[1]

- Notes and other documentation, including maps, charts, membership lists

- Data contained on either hard drives, electronic devices or removable media and all items listed in the sections of these documents that describe the items being sought to include deleted files, archived files and email files

- Data contained within any seized cellular phone, SIM card, PDA or electronic device to include, but not limited to, call logs, contacts, text messages, audio messages, images, Internet cache and deleted data.

Demuth's Suppression Exh. 1-a. Demuth says thousands of pages of books, magazines, pamphlets, leaflets, letters, personal diaries, journals, other writings, and his computer were seized from his bedroom in the execution of the warrant.

## II. ANALYSIS

**A. Probable cause**

The Fourth Amendment says "no Warrants shall issue, but upon probable cause". U.S. CONST., amendment IV. Probable cause for a search warrant "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Palega, 556 F.3d 709, 714 (8th Cir. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 214 (1983)) (internal quotation marks omitted). "Whether probable

---

[1] In the face of some ambiguity in Demuth's motion regarding which of these last two portions of the search warrant are challenged, see Demuth's motion at ¶¶ 4(c) and 11(c), the court assumes that Demuth challenges both.

cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (citation omitted).

The warrant here authorized the search of the "premises", without limitation. Specifically, it authorized the search of the address, described as a "[t]wo story single family home with brown siding, detached garage, storage sheds and any related curtilage." Demuth's Suppression Exh. 1-a. It is clear that here the warrant was supported by probable cause to believe the residence would contain evidence of criminal activity. Demuth seems to argue that the search warrant was unsupported by probable cause to search his bedroom or that it was overbroad in authorizing the search of his bedroom. He says he was not charged with any of the allegations made in the affidavit, and notes that he is only mentioned once in the affidavit, in connection with the RNCWC video. He seems to argue that the warrant should have been limited to areas within the control of Czernik.

But as the Supreme Court has stated, "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found". United States v. Ross, 456 U.S. 798, 820-21 (1982). More specifically, "where a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises." W. LaFave, Search & Seizure: A Treatise, § 4.5 (b) (4th ed. 2009).[2] Particularly relevant here, when people "share common living quarters but have separate

---

[2] Courts, including the Eighth Circuit, commonly cite the LaFave treatise in this area of the law. See, e.g., United States v. Pennington, 287 F.3d 739, 745 (8th Cir. 2002) (citing LaFave for the proposition that "[a] warrant to search at a street address includes authority to search the yard."); United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir. 1991) (citing LaFave for the proposition at issue here).

bedrooms … a single warrant describing the entire premises so occupied is valid and will justify search of the entire premises." Id.

The Ninth Circuit has rejected the specific argument Demuth makes. In United States v. Ayers, defendant Eddie Ayers appealed the denial of his motion to suppress evidence seized from his house upon execution of a search warrant. United States v. Ayers, 924 F.2d 1468, 1477 (9th Cir. 1991). The affidavit supporting the search warrant only alleged that Ayers's son was engaged in drug trafficking; Ayers argued that the police "exceeded the scope of the search warrant by searching the entire house, including his bedroom over which his son clearly did not have common control." Id. at 1480. The court said that "[a] search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of a residence." Id. The court noted that "contraband can be hidden in any portion of the residence", and found that the search was not overbroad or unreasonable. Id.

The Second Circuit has also rejected the argument. In United States v. Kyles, the defendant argued there was no probable cause to believe evidence of criminal activity would be found in his room because "(1) his room was a separate residence; and (2) he was not named as a suspect in the affidavits underlying the warrant." United States v. Kyles, 40 F.3d 519, 523 (2d Cir. 1994). The Second Circuit noted that if during a search, officers become aware that the warrant describes multiple residences, "the officers must confine their search to the residence of the suspect." Id. at 524. Noting that the defendant's room "had neither its own access from the outside, its own doorbell, nor its own mailbox", the court found that the bedroom was not a separate residence, and that there was probable cause to search it. Id. See also United States v. Canestri, 518 F.2d 269, 273-74 (2d Cir. 1975) (defendant's locked storeroom fell within scope of warrant targeting defendant's brother that authorized search of entire house because to hold

otherwise "would be to suggest that the purposes of a search warrant could be frustrated by the mere declaration of the owner of a one-family residence that one of the rooms therein 'belongs' to a party not named in the warrant.").

Other courts have followed this approach. See United States v. Towne, --- F.Supp.2d ----, 2010 WL 1499245 (D.Mass. Apr. 15 2010) ("If there is probable cause to believe that criminal activity is afoot in one room of a household, a warrant to search the entire dwelling is not overly broad.") (citation omitted); United States v. Butler, 71 F.3d 243, 249 (7th Cir. 1995) (where a building is being used as a single unit, "a finding of probable cause as to a portion of the premises is sufficient to support a search of the entire structure"); United States v. Waters, 786 F.Supp. 1111, 1118 (N.D.N.Y. 1992) ("where the premises are occupied in common ... probable cause need not be set forth in order to search each unit."); United States v. Vaughan, 875 F.Supp. 36, 44 (D.Mass. 1995) (defendant's bedroom fell within scope of warrant for search targeted at defendant's son where there was no evidence of limitation on son's use of and access to defendant's bedroom).

Here, according to the representations of both parties, Demuth had a bedroom within a single-family residence which he occupied in common with Robert Czernik, the target of the search. Under these circumstances and the cases cited above, it is clear that the warrant here, in authorizing the search of the premises without limitation, was supported by probable cause and not overbroad. Demuth's bedroom was an integral part of the residence. It is clear that the objects of the search – the documents and other media concerning the RNCWC that were associated with at least Czernik, if not also Demuth – could have been located in Demuth's bedroom and thus, under Ross, 456 U.S. at 820-21, the search could lawfully extend to that location. There is no evidence that Demuth's bedroom had been secured against access by Czernik, as in Vaughan and Canestri. As in Ayers, the search warrant here was issued "based on information regarding the alleged

5

illegal activities of one of several occupants of a residence," and the contraband could have been hidden in Demuth's bedroom. <u>Ayers</u>, 924 F.2d at 1480. As in <u>Kyles</u>, there is no evidence that Demuth's bedroom had a separate entrance, doorbell, or mailbox. <u>Kyles</u>, 40 F.3d at 524.

In conclusion, the warrant was not overbroad in this regard and the showing of probable cause extended to Demuth's bedroom.

**B. Particularity requirement**

Demuth argues that the search warrant violated the particularity requirement of the Fourth Amendment in that it authorized the searching agents to seize thousands of pages of written and electronic documents based on their political content, protected by the First Amendment, without sufficient particularity as to which ones could be seized. Demuth requests an evidentiary hearing "to demonstrate the overbroad and unconstitutional scope of the warrant of his residence and the resulting First Amendment materials that were seized". Demuth Motion to Suppress at 11.[3]

The court does not need to determine whether the warrant is invalid, because, as explained below, the good-faith exception applies. The Supreme Court in <u>Leon</u> explicitly contemplated this mode of resolving a motion to suppress. See <u>United States v. Leon</u>, 468 U.S. 897, 925 (1984) (courts can "reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith."); see also <u>United States v. Potts</u>, 586 F.3d 823, 832 (10th Cir. 2009) ("Because we conclude that the evidence was admissible under the <u>Leon</u> exception, we need not decide whether the warrant failed to satisfy the particularity requirement."); <u>United States v. Watson</u>, 498 F.3d 429, 431 (6th Cir. 2007) ("Because we hold that the good-faith

---

[3] The government complains that, though Demuth has been provided a list of items that were seized, he has not specifically identified which items he believes were seized in violation of the Fourth Amendment. But it is apparent from his motion that Demuth believes that the seizure of all books, pamphlets, magazines, leaflets, letters, personal diaries, journals, and other writings violated the Fourth Amendment.

6

exception applies, we need not determine whether the warrant was invalid.").

## C. Good faith exception

The government argues that even if the warrant here violated the particularity requirement of the Fourth Amendment, the court should not exclude the evidence obtained pursuant to the warrant because the officers reasonably relied on the warrant's authorization to seize evidence. Demuth says the good faith exception does not apply, and requests an evidentiary hearing to establish the lack of objective good faith reliance on the search warrant by the seizing agents.

"Not every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant." United States v. Hamilton, 591 F.3d 1017, 1027 (8th Cir. 2010) (citing Herring v. United States, --- U.S. ----, 129 S.Ct. 695, 700 (2009)). The exclusionary rule, "when applicable, forbids the use of improperly obtained evidence at trial." Herring, 129 S.Ct. at 700 (citing Weeks v. United States, 232 U.S. 383, 398 (1914)). But the exclusionary rule applies "only where it results in appreciable deterrence." Id. at 699 (citations and internal quotation marks omitted). In particular, as the Supreme Court held in Leon, when police act under a warrant that is later found invalid, "the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." Id. at 701 (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). This inquiry "is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." Herring, 129 S.Ct. at 703 (quoting Leon, 468 U.S. at 922, n.23) (internal quotation marks omitted). "These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, but not his subjective intent." Id. (citations omitted). The court must consider the "culpability of the law enforcement conduct" in

deciding whether the deterrent purpose of the exclusionary rule is served in a particular case. Herring, 129 S.Ct. at 703. "The exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 702.

But "[g]ood faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996). "As Leon emphasized … there are instances where exclusion is required even when an officer obtains a warrant and abides by its terms." United States v. Watson, 498 F.3d 429, 431 (6th Cir. 2007) (citing Leon, 468 U.S. at 922). "[D]epending on the circumstances of the particular case, a warrant may be so facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923.

Here, the officers acted in objectively reasonable reliance on the warrant. Officers submitted an exceedingly long and detailed affidavit, signed by three affiants. The affidavit is unusually specific and strongly indicates good faith in going far beyond the minimum requirements of an affidavit to establish probable cause. The affiants even anticipate problems they could encounter in executing the warrant, and address those problems in the affidavit. Indeed, the officers "undertook a thorough investigation, as detailed in the affidavit, and the [judge] found probable cause and issued the warrant." United States v. Tracey, 597 F.3d 140, *154 (3rd Cir. 2010) (citing Massachusetts v. Sheppard, 468 U.S. 981, 989 (1984) (holding that the good faith exception applied where "the officers took every step that could reasonably be expected of them") (brackets and ellipsis omitted)). Because the law enforcement conduct is so precise and careful, and far from flagrant, deliberate, reckless, or grossly negligent, the deterrent purpose of the exclusionary rule would not be served by its application here.

Moreover, the warrant here is not so facially deficient that the executing officers

could not reasonably presume it to be valid. The warrant is very specific in listing the items to be seized. More important, the portions Demuth challenges as overbroad are not so obviously overbroad that no officer could reasonably presume them to be valid. Indeed, it is far from clear that the warrant is actually overbroad at all, given that the particularity of a warrant "must be assessed in terms of practicality", United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007), and the officers here, like the officers in Summage, did not know the particular format in which the messages and documents targeted by the investigation were kept. In this situation, it may be practically "necessary to search a broad array of items for the relevant materials". Summage, 481 F.3d at 1079-80. Given this law, the court cannot conclude that the warrant was so facially deficient that the executing officers could not reasonably have presumed it to be valid.

Demuth says this case is controlled by Groh v. Ramirez, 540 U.S. 551 (2004), in which the Supreme Court found that the Leon good faith exception did not apply. But Demuth's reliance on Groh is inapposite. In Groh, "[t]he warrant was plainly invalid", as it "failed altogether" to describe the items to be seized, literally "provid[ing] no description of the type of evidence sought." Groh, 540 U.S. at 557. In this situation, "even a cursory reading of the warrant [] - perhaps just a simple glance - would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." Groh, 540 U.S. at 564. The court concluded that it would not have been reasonable for an executing officer "to rely on a warrant that was so patently defective". Groh, 540 U.S. at 561, n.4 (citing Leon, 468 U.S. at 915, 922 n.23). The warrant here, however, is not patently defective, as it describes the items to be seized, and indeed describes many of them in great detail. Even if the warrant had been made up of only those portions Demuth challenges, a "cursory reading" would not have revealed a glaring deficiency that any reasonable police officer would have known was

constitutionally fatal.[4]

Demuth's citation to United States v. Lazar, 604 F.3d 230 (6th Cir. 2010) does not compel a different result.  In Lazar, the warrant authorized the seizure of "any and all documents and records ... concerning the treatment of any of the below listed patients", Id. at 233, without listing any patients below.  Id. at 234.  In Lazar, as in Groh, and unlike here, the warrant's facial deficiency was "so evident ... that no officer could reasonably presume the warrants valid."  Lazar, 604 F.3d at 238.  Furthermore, Lazar does not stand for the proposition for which Demuth appears to advance it – namely, that where a warrant authorizes the seizure of arguably First Amendment-protected materials, an officer cannot reasonably rely on a warrant that maybe fails to particularize the items to be seized with "scrupulous exactitude", even in the face of practical restraints on the officers' knowledge of the storage formats of those materials.

The court concludes that the officers reasonably relied on the warrant in seizing those items that the warrant authorized them to seize, and thus the exclusionary rule should not be applied to those items.

**D. The journal**

Demuth argues that seizure of the journal was not authorized by the warrant.  The government responds that, though this may be true, the journal seizure should be upheld under either the plain view doctrine or the good faith exception.

1. *Whether the warrant authorized the seizure of the journal*

The warrant does not specifically list "journals" or "diaries" as items that the officers can seize.  The only portions of the warrant that could authorize the seizure of a journal are the portions that authorize the seizure of "Notes and other documentation" and "Media in whatever form".  However, under both portions, the examples provided after

---

[4] Because the court denies Demuth's motion to suppress under Franks [Dkt. 85], the court rejects Demuth's derivative argument that the Leon exception cannot apply because of alleged Franks violations.

10

these general phrases suggest that journals may not have been meant to be included in these phrases.

The court concludes that seizure of a personal journal was not specifically listed and authorized by the warrant. Therefore, the burden is on the government to establish an exception to the warrant requirement. United States v. Kennedy, 427 F.3d 1136, 1140 (8th Cir. 2005) (citing Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971) (additional citation omitted)).

2. *The plain view exception*

The government argues that even if the warrant did not authorize the seizure of the journal, it was still properly seized under the plain view doctrine. Searches conducted "outside the judicial process without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008). One established and well-delineated exception is the plain view doctrine. United States v. Varner, 481 F.3d 569, 572 (8th Cir. 2007). To seize evidence without a warrant under the plain view exception, "the government must prove that (1) the item is in plain view; (2) the officer is lawfully located where he may view the object; and (3) the incriminating nature of the evidence is 'immediately apparent.'" United States v. Clay, 579 F.3d 919, 932 (8th Cir. 2009) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)).

Given that the officers here were executing a warrant that authorized the seizure of documents, the first two elements are present whether the journal was on a desk or in a desk drawer, as Demuth alleges. The question is whether the third element of the plain view doctrine is present here. While Demuth represents that the journal contained no information concerning the RNCWC, the court has not seen the journal and does not know why it was seized. The government's cited case of United States v. Isaacs, 708 F.2d 1365,

1368-69 (9th Cir. 1983), does not compel the conclusion that the journal was properly seized under the plain view doctrine. Further hearing is necessary to resolve this issue.

Demuth's motion [Dkt. 86] is denied with respect to all items except the journal. The court reserves ruling on the motion with respect to the journal pending further hearing.

**IT IS SO ORDERED.**

**DATED** this 30th day of July, 2010.

_____
JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA