IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. SCOTT RYAN DEMUTH, Defendant. | No. 3:09-cr-00117-JAJ ORDER |
|---|---|

# I. MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH OF DEMUTH'S RESIDENCE UNDER FRANKS V. DELAWARE

Demuth filed a motion to suppress any evidence obtained from the search of his residence under Franks v. Delaware, 438 U.S. 154 (1978), arguing that the application for the search warrant included intentional or reckless misrepresentations and omissions of fact by the affiant police officers which were material to the finding of probable cause by the judge who issued the warrant [Dkt. 85]. Demuth makes several specific allegations of intentional or reckless misrepresentations and omissions of fact, and argues that these allegations establish a preliminary showing sufficient to require the court to hold an evidentiary hearing under Franks.

In order to prevail on a challenge to a warrant affidavit pursuant to Franks v. Delaware, 438 U.S. 154 (1978), the challenger must prove by a preponderance of the evidence that "(1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) without the false statement, the affidavit would not have established probable cause." United States v. Neal, 528 F.3d 1069, 1072 (8th Cir. 2008) (citing Franks, 438 U.S. at 155-56). Where the defendant makes a "substantial preliminary showing" of these two elements, "the Fourth Amendment requires that a hearing be held at defendant's request." United States v. Butler, 594 F.3d 955, 960 (8th Cir. 2010) (explaining Franks, 438 U.S. at 155-

56). This substantial preliminary showing is "not easily met." United States v. Snyder, 511 F.3d 813, 816 (8th Cir. 2008) (quotations and citation omitted).

A similar showing is necessary to compel a hearing when the defendant requests a hearing based on omissions, rather than false statements, in the affidavit. "When a defendant claims he is entitled to a Franks hearing based on information that was omitted from the affidavit, he must prove by a preponderance of the evidence that the applying officer omitted facts in reckless disregard of whether the omission made the affidavit misleading and that, if supplemented by the clearly critical information omitted, the affidavit would not have supported a finding of probable cause." United States v. Summage, 575 F.3d 864, 873 (8th Cir. 2009) (quotations and citations omitted).

"An affidavit submitted in support of a warrant carries a presumption of validity." United States v. Sherman, Slip Copy, 2010 WL 1461559, *5 (8th Cir. Apr. 14, 2010) (citing United States v. Neal, 528 F.3d 1069, 1072 (8th Cir. 2008)). The Supreme Court in Franks itself detailed what triggers the requirement of an evidentiary hearing:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks, 438 U.S. at 171. Unless the challenged statements or omissions in the affidavit are necessary to the finding of probable cause, no hearing is required. See Neal, 528 F.3d at 1072; see also Summage, 575 F.3d at 873. "Probable cause exists when a practical, commonsense inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a fair probability that contraband or evidence of a crime will be found in a particular place." Sherman, 2010 WL 1461559 at *5 (citing

Stevens, 530 F.3d at 718 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983))).

The court turns to an analysis of each of Demuth's specific allegations of misrepresentation or omission in the affidavit submitted to the magistrate in support of the search warrant.

A. Affidavit omitted affiants' knowledge that members of RNCWC had no interest in committing criminal acts

Demuth asserts that the affiants omitted their knowledge that members of the Republican National Convention Welcoming Committee ("RNCWC"), while they discussed planning and committing criminal acts, never actually committed any criminal acts, and had no interest in committing criminal acts. However, Demuth provides no evidence of this alleged fact, nor evidence that affiants had any knowledge of this fact. Demuth furnishes no "[a]ffidavits or sworn or otherwise reliable statements of witnesses", as Franks requires.

B. Affidavit omitted affiants' knowledge concerning informant CRI1

Demuth argues that affiants omitted knowledge about their informant, CRI1, implying that a magistrate would find CRI1 unreliable with this knowledge. Demuth asserts without support that CRI1 is Chris Dugger. Demuth points out that the affiants did not inform the judge that an FBI informant, CRI2, had noted in a report that a man named Chris Dugger, who had attended an RNCWC meeting, "expressed a profound hatred of law enforcement and shared his desire to 'kick cops asses' with the RNCWC", and that Dugger "was extremely motivated and aggressive but that he did not 'fit in' with the RNCWC" (Demuth's Exh. 2-b). Demuth then says the affiants failed to inform the judge that CRI1 is a "violent sociopath" who became an informant to get domestic assault charges dismissed so that he could become a Ramsey County Sheriff's Deputy. In support, Demuth provides a document showing that Chris Dugger had domestic assault charges dismissed on August 28, 2007 (Demuth Exh. 3-a).

Nothing in Demuth's offer of proof shows that Dugger is a violent sociopath. Nothing in the offer of proof shows why the charges against Dugger were dismissed, that the affiants knew or had reason to know of the dismissal of charges, or that if they did, it tainted Dugger's reliability in any way. Moreover, even if the affiants knew of the charges, "tipsters often provide information in the hopes of obtaining leniency with respect to their own situation and that does not necessarily mean they are unreliable." United States v. Gabrio, 295 F.3d 880, 884 (8th Cir. 2002) (citation omitted); see also United States v. Williams, 477 F.3d 554, 558-60 (8th Cir. 2007) (omission from affidavit of arrangement between police and informant not misleading, and probable cause is not defeated by omission of informant's criminal history if the information is at least partly corroborated). Demuth's attack is supported by nothing more than a "mere desire to cross-examine", evident in his reply expressing only curiosity about the "informant's intentions and history of violence", and failing to show that his unsupported allegations, even if true, in any way diminish CRI1's reliability (Dkt. 117 at 2).[1]

C. Affidavit misrepresented the relationship between certain pamphlets and the RNCWC

The affiants describe several documents given to one of the informants at the Convergence Center, a place that, affiants say, leaders of the RNCWC rented to be used as a coordination center for anarchist activities during the RNC. Demuth argues that the affiants omitted their knowledge that only one of the documents "can in any way be claimed to have been authored by members of the RNCWC".

This argument fails on two grounds. First, the document admittedly authored by RNCWC members – the RNC WELCOMING GUIDE: EVERYTHING YOU NEED TO KNOW TO BE SMART AND DANGEROUS DURING THE RNC (BEFORE YOU ASK) – supports probable cause to search a residence of RNCWC members in that it

---

[1] Demuth's allegation that CRI1 was an "*agent provocateur*" does not diminish the reliability of CRI1's information.

advocates criminal activity. Moreover, the fact that the other documents – which also clearly advocate criminal activity according to the affidavit – were given to an informant at the Convergence Center of the RNCWC connects those documents to RNCWC members, and thus also supports probable cause to search their residences. Disclosing original authorship of these documents would not change the magistrate's finding of probable cause, given the alleged collection, presence, and distribution of these documents at the Convergence Center.

D. Affidavit misrepresented affiants' knowledge concerning reliability of informant CRI2

The affidavit refers to CRI2 as "a Confidential Reliable Informant (CRI2) from another law enforcement agency." (Demuth Exh. 1-d). The affidavit goes on to say "This agency has utilized this CRI on past investigations and has been able to corroborate much of the information that has been provided." Id. Demuth argues that the affiants falsely imply that the other agency found him to be reliable, and in support Demuth provides FBI reports from CRI2 that refer to CRI2 only as a "Source who is in a position to testify", with nothing concerning his reliability (Demuth Exhs. 2 & 5). With this offer of proof, Demuth fails to make a substantial preliminary showing of an intentionally or recklessly false statement or omission concerning CRI2. Nothing in Demuth's offer of proof suggests that CRI2 was not reliable, or in any way contradicts any of the affiants' representations about CRI2.[2]

E. Affidavit misrepresented contents of video

---

[2] Demuth also argues that the failure of affiants to establish CRI2's reliability renders any information provided by CRI2 unable to support any finding of probable cause. But he cites no case law suggesting that the level of specificity of the affiants' allegation of CRI2's reliability here is insufficient to allow CRI2's information to support probable cause. The fact that the affidavit says only that the other agency has corroborated much of CRI2's information in the past, and does not describe any alleged corroboration more specifically, does not suggest an intentional misrepresentation or omission.

5

Demuth argues that the affiants intentionally mischaracterized a video,[3] which was only a "spoof of stereotypes of anti-authoritarian protestors". Affiants described the video as depicting persons dressed in the attire of "black bloc" – allegedly a tactic causing significant property damage and violence toward law enforcement – engaged in the following activities:

- throwing a Molotov cocktail

- handling a bolt cutter

- rolling a bowling ball labeled RABL, the acronym of an anarchist group responsible for vandalizing military recruiting stations by throwing bowling balls through the windows, and

- throwing rocks at riot police.

The affiants, Demuth says, failed to inform the judge of parts of the video that show its harmlessness, including:

- the fact that the Molotov cocktail lands in a grill, starts the grill on fire, and someone starts cooking with it;

- the bolt cutter was passed to someone who begins to trim the bushes;

- the anarchist group mentioned, RABL, has not existed for ten years; and

- the individual throwing rocks at the police is a small child with a slingshot.

The court has reviewed the video. Everything the affiants say about the video is true.[4] Demuth's assertions that the video contains the above portions, omitted from description in the affidavit, are also true.[5] However, these omitted portions do not show that the video is only meant as a spoof; any omissions by the affiants were not misleading.

---

[3] Available at http://www.youtube.com/watch?v=j6PLwOt0Bls

[4] The nature of the small objects that the child throws at the police is not quite discernable to the court, but they could certainly be rocks; this would be consistent with the greater context of the scene in which protestors appear to be fighting police.

[5] The court has no knowledge concerning the existence of RABL.

The parts of the video described in the affidavit, even when accompanied by the portions omitted from the affidavit, would still suggest that the RNCWC was preparing for criminal activity. Clearly a product of the RNCWC, the video depicts people in black bloc attire, a person throwing a Molotov cocktail, and people fighting with police. It ends with the message "WE'RE GETTING READY, WHAT ARE YOU DOING?" Demuth provides no affidavit, report, or any other evidence indicating that the RNCWC, the affiants, or anyone else considered the video a spoof. Demuth only provides one page of a transcript of a witness, David Korus, in a federal case in Minnesota describing the video, saying "in my personal opinion, if I can give that, it kind of decriminalizes when it lands in a grill and starts the grill on fire and then somebody starts cooking with it." (Demuth Exh. 6.) Demuth provides nothing else to substantiate his argument that the video was only meant as a joke.

Demuth has not made a substantial preliminary showing of an intentional misrepresentation or misleading omission in connection with the video.

F. Affidavit omitted mention of affiants' knowledge of intended use of bricks

In the affidavit, the affiants say they observed a stack of bricks at the residence to be searched in Minneapolis, and added "It should be noted there appears to be no construction projects at the residence." (Demuth Exh. 1-j.) Demuth argues that the affiants intentionally failed to inform the judge that their own investigation had previously revealed that the residents of the house intended to use the bricks to build a barbecue pit, providing a report from a Ramsey County Sheriff's Department confidential informant stating that a resident "said he has about 3000 bricks at his residence, and he is thinking of building a BBQ pit" (Demuth Exh. 8-a).

In light of all the other information in the affidavit supporting probable cause (discussed below), even if the affidavit were supplemented by this omitted information, the affidavit would still have supported a finding of probable cause. Therefore, this omission

does not compel the court to hold a Franks hearing.  See Summage, 575 F.3d at 873.

### G. Affidavit omitted mention of affiants' knowledge of intended use of purchased items

Demuth notes that the affidavit describes observations by investigators of Eryn Trimmer's trip to Krech Ironworks and Home Depot, where he purchased a gallon of paint, a deadbolt, and keyhole saw (Demuth Exh. 1-m).  Demuth argues that the affiants intentionally failed to inform the judge that Trimmer had just moved into the residence and was fixing up the house, providing an informant's report that Eryn was living with Monica who had recently bought a house (Demuth Exh. 9), and a print-out of the webpage of Krech Ironworks (Demuth Exh. 10).  Nothing in Demuth's offer of proof shows that Eryn was fixing up the house, or helping any one else fix up the house; nothing in the affidavit was misleading.

### H. Affidavit misrepresented intention of RNCWC members to use incendiary devices

Demuth notes that the affiants claim that the RNCWC intended to use incendiary devices during the RNC (Demuth Exh. 1-d, 1-f).  Demuth argues that the affiants failed to include evidence that CRI2 was present and participated in a meeting on August 17, 2008 at Powderhorn Park where the suggestion that such devices be considered was firmly rejected by the RNCWC leadership.  However, Demuth provides no evidence to support this allegation, and no evidence that affiants were aware of it, suggesting only that the testimony of CRI2 would support the allegation.  Demuth's mere desire to cross-examine CRI2 does not mandate an evidentiary hearing.  See Franks, 438 U.S. at 171.

### I. Affidavit omitted material facts concerning the Lilydale Tennis Club

The affidavit mentions that in August of 2008 Mendota Heights police officers recovered a number of items from the abandoned Lilydale Tennis Club, including RNCWC pamphlets, an anarchist flag, a carpet with "NO RNC" painted on it, PVC piping, three five-gallon buckets of paint, chlorine, bleach, boxes of screws, and maps of downtown St. Paul (Demuth Exh. 1-I).  Demuth argues that the affiants failed to inform

the judge that this was wholly unrelated to any person staying at any of the residences to be searched. Demuth provides no evidence for this claim, or that the affiants knew it; indeed, the affidavit indicates that the affiants thought the club was used by out-of-town associates of the RNCWC. Demuth provides no evidence that anything the affiants said in connection with the Lilydale Tennis Club was incorrect, or that they omitted any material information about it.

J. Affidavit omitted material facts concerning a shotgun

The affidavit notes that CRI2 had observed a shotgun standing up in the corner of the subject residence, and noted in parentheses "(no further information provide [sic] on location or functionability)" (Demuth Exh. 1-j). However, Demuth argues, the affiants failed to inform the judge that one of their informants surmised that the shotgun was non-functioning "based on the type of people involved in the [RNCWC]", but was "uncertain if it functions or not" (Demuth Exh. 5).

The informant's speculation as to whether the shotgun was functional does not render the affiants' statement false or incomplete. Moreover, including the informant's guess about the functionality of the shotgun and the basis for the guess would not defeat probable cause here, in light of all the independent probable cause discussed below.

K. An affidavit with omitted information included and alleged misrepresentations clarified would still have been sufficient to support the finding of probable cause to search

As is evident, most of Demuth's allegations of falsehood and reckless disregard for the truth in the affidavit are not accompanied by sufficient offers of proof. Regarding the rest of Demuth's challenges to the affidavit, even if all of Demuth's proposed changes and clarifications were made, the affidavit would still support the finding of probable cause. The affidavit contains sufficient information suggesting that evidence of criminal activity would be found in the residences of leaders of the RNCWC, including:

- the information on the RNCWC website indicating the group's intent to shut down

    the RNC by blockading streets, bridges, and freeways (see Demuth Exh. 1-d);

    - information regarding the contents of RNCWC group e-mails, in which members of the RNCWC discussed planning and committing many criminal acts (see Demuth Exh. 1-f);

    - information regarding the ideas and tactics for criminal activity discussed at the "pReNC", a gathering hosted by the RNCWC (see Demuth Exh. 1-g);

    - information about the role-playing scenarios for criminal activity at the "action camp" hosted by the RNCWC (see Demuth Exh. 1-h and 1-i); and

    - information from CRI1 and CRI2 concerning statements made by specific RNCWC leaders indicating their intent to commit criminal acts (see Demuth Exh. 1-k, 1-l, 1-m).

In light of this unchallenged information in the affidavit, the challenged statements and omissions were not necessary to the finding of probable cause; thus, no Franks hearing is required. Neal, 528 F.3d at 1072.

    Demuth's motion to suppress evidence obtained in the search of his residence under Franks v. Delaware [Dkt. 85] is denied.

## II. MOTION TO SUPPRESS EVIDENCE SEIZED FROM DEMUTH'S COMPUTER

    Defendant Scott Ryan Demuth ("Demuth") also moves to suppress evidence seized from his computer pursuant to a warrant, arguing that (i) the warrant was issued on the basis of an affidavit that contains false and recklessly misleading information, and omits material information, and that if these falsehoods, misrepresentations, and omissions were known to the judge who issued the warrant, he would not have issued the warrant; and (ii) the warrant was unsupported by probable cause, because the allegations in the affidavit, even if taken as true, did not establish probable cause to search his computer. The government disputes both arguments, and adds that, in any event, the good faith exception

of Leon should apply to validate the search.

A. Franks v. Delaware argument

The affidavit submitted in support of the search warrant here includes the same information about the RNCWC video included in the affidavit submitted in support of the search warrant to search the residence of Robert Czernik in Minneapolis, with whom Demuth was living. Demuth makes the same challenges to the inclusion of information concerning the video in the affidavit here as he does in his motion to suppress the evidence seized from his residence under Franks. The court rejects this argument on the grounds enunciated above in connection with Demuth's motion to suppress the evidence seized from his residence under Franks.

Demuth also says that the affiant omitted from the affidavit that she had been previously given access to the contents of the computer by the officers who seized it. This conclusory attack is wholly unsupported by any offer of proof. It is, instead, supported by nothing more than a mere desire to cross-examine the affiant. Moreover, Demuth does not give any reason to believe that this alleged omission in the affidavit was necessary to the finding of probable cause. In this context, no Franks hearing is warranted.

B. Whether the warrant was supported by probable cause

Demuth argues that the warrant issued to search his computer was unsupported by probable cause to believe there would be evidence of crime on his computer. The government responds that the affidavit provided the necessary probable cause, and that, in any event, the good faith exception should apply to prevent suppression of the evidence seized in the search of Demuth's computer.

Probable cause to search exists if, considering a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Nieman, 520 F.3d 834, 839 (8th Cir. 2008) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)) (internal quotation marks omitted). The court owes

11

"substantial deference to a magistrate's determination of probable cause." Id. (citing Gates, 462 U.S. at 236).

The government argues that the information in the affidavit showed a fair probability that Demuth's computer would contain information concerning animal enterprise terrorism. In particular, the government points to the following features of the affidavit as supporting this probability:

- identification of Demuth as an animal rights extremist;

- the demonstrated connection between Demuth and another animal enterprise terrorist, Peter Young, and Kelly Higgins, who traveled to Minnesota about the time of the university lab break-in;

- a description of one of the perpetrators based on the video of the break-in as matching the height of Demuth;

- affiant's belief that Demuth had a computer that he used to espouse his extremist views;

- affiant's belief that Demuth was a suspect in illegal activities disrupting business operations in Minnesota; and

- information from Demuth's journal circumstantially implicating him in the break-in at the university lab.

Demuth responds that this is not enough to establish a fair probability that evidence of a crime would be found in his computer. He also says the journal should not be considered in assessing whether the affidavit provided probable cause because, as he argues in a separate motion to suppress, the journal was improperly seized without a warrant in the search of his residence in August of 2008. The court has reserved ruling on that motion pending further evidence on that issue.

The court reserves ruling on this motion pending resolution of the motion to suppress the journal.

C. Good faith

The government argues that the good faith exception should apply to validate the search under the warrant, because the agents who searched the hard drive acted in objectively reasonable reliance on the warrant. Demuth argues that good faith does not apply because the FBI knew that the seizure of the journal had been warrantless. The affiant, then, knew at the time she submitted the affidavit in support of her warrant request, relying in part on the journal, that she was relying on evidence illegally seized, Demuth argues. This conduct, argues Demuth, renders the good faith exception inapplicable. Demuth requests a hearing to show that the FBI knew of the illegal seizure of the journal and that without the journal the warrant lacks probable cause to search the computer.

The court has no evidence before it concerning the affiant's knowledge of the circumstances of the seizure of the journal at the time she submitted her request for a warrant. The court also has no evidence before it concerning whether the officers who executed the warrant had any knowledge about the journal or the affidavit. The court is thus unable to rule on the government's argument that the good faith exception applies without further evidence on the matter.

Demuth's motion to suppress the search of his residence [Dkt. 85] is denied. The court reserves ruling on Demuth's motion to suppress evidence seized from his computer [Dkt. 89].

**IT IS SO ORDERED.**

**DATED** this 30th day of July, 2010.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA