IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-cr-0117-JAJ |
| | ) | |
| SCOTT RYAN DEMUTH | ) | MOTIONS IN LIIMINE |
| | ) | |
| Defendant. | ) | |

Now comes the defendant, Scott Demuth, by his undersigned counsel and

respectfully moves that this Court issue an Order precluding the prosecution in the above-

entitled cause from introducing into evidence at trial the following matters:

**A. Any Alleged Actions Attributed to the ALF, Not Specified in the
Indictment And For Which the Government Has No Evidence Which
Links Such Actions to the Defendant.**

In its answer to the Bill of Particulars the government listed 24 alleged animal

rights actions which someone allegedly claimed were done in the name of the Animal

Liberation Front (ALF), and which come under the phrase "other animal enterprises

elsewhere" contained in the second superseding indictment.  (See Government Response

to Order on Bill of Particulars, Filed Under Seal)

Twelve of these actions allegedly took place in California, seven in New York,

and one each in Pennsylvania, Florida, Mississippi, Louisiana, and Illinois.  There are no

actions listed in Iowa or Minnesota.  The government has provided no other information

as to the nature and circumstances of these events other than their date, general location

and name of the animal enterprise.

The prosecution essentially admits in its pleading however, that other than the break-in at Spence Labs in Iowa and the release of animals in Minnesota specified in the indictment, it has no evidence, direct or circumstantial, linking the defendant to any of the 24 incidents listed in its answer to the Bill of Particulars. "The prosecution intends to offer, in its case-in-chief, circumstantial evidence that Demuth was involved in the two 'direct actions' identified in the second superseding indictment." (Answer to Bill of Particulars at page 6, filed under seal).

Testimony or any other evidence referring to the listed 24 actions for which there is no link to Scott DeMuth has no probative value to the charges under this indictment, and the introduction of these numerous illegal acts would be highly prejudicial to the defendant. Under Federal Rules of Evidence (FRE) 403, even relevant evidence, which is not even the case here, should be excluded, if its probative value is substantially outweighed by the danger of unfair prejudice. Here the evidence of other alleged ALF actions not linked to the defendant is not relevant, and even if *arguendo* it has some probative value, such value clearly is outweighed by the potential prejudice.

After two prior indictments, which the government apparently believed were insufficient, on the third try, it has charged a single count conspiracy, devoid of denominated co-conspirators, alleging an agreement to disrupt and damage the properties of Spence Lab in Iowa and Lakeland Farms in Minnesota. It also includes a vague reference to "other animal enterprises elsewhere," but the dates and places are not specified.

The defendant is not charged with membership in the ALF and the conspiracy charged in the indictment does not mention the ALF. The actions listed in the Bill of

Particulars are not part of the conspiracy specifically charged in the indictment, but rather a collection of disparate actions taken by individual small groups of people who allegedly agreed to plan and carry-out a specified action.  The fact that some unknown person may have claimed credit for these actions in the name of the ALF, does not make it part of the specific conspiracy charged here.

Many disparate people with different motivations and agreements might use the ALF name as a short hand way to focus on the rationale for their act. Even the government concedes that the ALF is a decentralized organization with separate small groups which act independently of each other.

> Animal rights groups generally do not have an organized membership for the purpose of conducting their criminal activities.  ALF actions, for instance, are typically conducted by 'cells' or small groups of people operating independently and without formal direction from any centralized leadership.

(Affidavit of FBI agent Melissa M. Henderson, paragraph 43, filed in support of application for Search Warrant to search Scott DeMuth's computer.)

The acts listed by the government, unless specifically linked by evidence and not general ideology, are at best separate acts and conspiracies and not probative of the conspiracy charged here. To allow the jury to hear about these numerous unrelated actions listed by the government would be devastating to any chance for Scott DeMuth to have a fair trial.  Under FRE 403 and in the interests of justice and fairness, the government should be precluded from eliciting testimony or introducing evidence on these actions. See e.g., *King v. Ahrens*, 16 F.3d 265, 269 (8th Cir. 1994); *United States v. Dennis*, 625 F.2d 782, 796 (8th Cir. 1980) (Exclusion proper if admission would lead to consideration of collateral issues.)

## B. Evidence of the Defendant's Purported Political Beliefs, Including His Writings and Possession of Literature Concerning Anarchism, Communism, Socialism, Native-American Rights, Animal Rights and Human Rights.

In the early stages of this case, the government made much of the claim that the defendant was an anarchist and therefore could not be trusted to respect the system and rulings of the Court. The government also used the fact that the defendant protested against the Grand Jury outside the courthouse against him when arguing in opposition to granting bail. It should be clear that the defendant can not be put on trial for his political beliefs, protest or anti-government writings, or for the books, magazines and pamphlets he reads or distributes.[1] The First Amendment protects the right of Scott DeMuth to freedom of speech that does not advocate the imminent use of force or violence and to hold political beliefs and possess literature that the prosecutor, or even most Americans, do not like or agree with.

The Court should not allow any testimony or other evidence concerning the defendant's political beliefs, his writings or about the books and other literature he reads or possesses, unless it can be shown that such evidence is directly relevant to the specific charges in the indictment. Further, mere possession of a book or magazine is not probative evidence that the possessor agrees with the writing or has even read it. Even if *arguendo*, the defendant's First Amendment protected activities have some relevancy to the indictment, the prejudicial nature of such evidence substantially outweighs its limited probative value. See FRE 403.

---

[1] The defendant acted as an archivist and literature distributor, which explains why he has numerous copies of publications in his possession.

4

### C. Any Testimony or Evidence About the RNC Welcoming Committee (RNCWC) Activities.

The defendant was involved with the RNCWC. This involvement began at least a year after the last act of conspiracy charged in the indictment. The indictment makes no mention of the RNCWC nor does the agreement charged by the conspiracy have anything to do with the activities of the RNCWC. Although roommates of the defendant are charged with state criminal law violations alleged as part of their work with the RNCWC, Scott DeMuth has never been charged with any alleged RNCWC wrongdoing.

Nonetheless, the local authorities raided Mr. DeMuth's home and seized documents and writings of his, including a personal journal. Right now the defense has several motions pending challenging the seizure of this evidence under the Fourth Amendment. If however, any evidence seized from this raid is admitted into evidence, the defendant seeks an Order preventing any witness from testifying that it was seized as part of a raid on the houses of RNCWC members. Such testimony has no probative value and would be highly prejudicial by linking Mr. DeMuth to the police investigation and serious charges against certain RNCWC activists. Such evidence is not relevant under FRE 401 and should not be admitted.

In addition, the FBI has wrongly alleged, based on an alleged "confidential reliable informant," that Scott DeMuth appeared in an RNCWC video in which mock acts of vandalism and violence were depicted. This RNCWC video has nothing to do with the charges in the indictment before the Court and further, the alleged informant is mistaken or intentionally lying about Mr. DeMuth's presence in this video. Consequently this video or testimony concerning it must be precluded from this trial. The defendant

opposes any mention of the RNCWC in the trial of this case and seeks an order
prohibiting such evidence.

### C. The Acts Enumerated in the Government's Prior 404(B) Pleading.

In an earlier pleading under the previous indictment, the prosecution gave notice
of several prior acts which it apparently would seek to introduce under FRE 404(b).
Although the government has not renewed his intention to submit such evidence, one of
which has now been included in the present indictment, the defense, out of an abundance
of caution, seeks to bar these acts if the government now claims that its prior notice is
still in effect.

Two of the acts concern activities directed against a munitions maker in
Minnesota, Alliant Techsystems (ATK).  In one listed act, erroneously dated as "March
of 2006," (the correct date is October, 2005), Scott DeMuth was arrested along with
numerous other peace protestors, including nuns and other pacifists, in an open public
protest culminating in a trespass.  Clearly, a form of public anti-weapons maker protest
resulting in civil disobedience is far different from the secret forceful acts taken at Spence
Labs or even the secret release of animals at Lakeside Ferrets Inc. in Minnesota in the
name of animal rights. Under FRE 404(b), evidence of Scott's trespass arrest is not
probative of a plan, motive, opportunity, preparation or intent to commit the conspiracy
charged in the indictment. The public protest and trespass at the ATK was not similar in
kind to the conspiracy charges here and therefore is not relevant to any material issue in
this case and is inadmissible under FRE 404b.  *See e.g.*, *United States v. Ruiz-Chavez*,
2010 WL 2790831 (8th Cir. 2010).

The second incident involves trespass and vandalism at ATK, dated March 16, 2006, for which it is alleged Earth Liberation Front anonymously took credit, and is even more far a field and inadmissible. While it involves some destruction of property at the same military manufacturer, there is no evidence that the defendant was involved in this incident and credit is taken by a group to which the defendant is not charged with belonging. Certainly, the fact that a secret protest was directed at the same company does not rise to a sufficient level - preponderance of evidence - to be admissible against the defendant. *See Id.*

Finally, the prosecution wants to inform the jury that the defendant was held in civil contempt for refusing to testify before the Grand Jury said to be investigating the Spence break-in. The government wants the jury to speculate that because Scott refused to testify he was he covering up evidence to help his un-indicted, unidentified co-conspirators. Scott DeMuth has consistently maintained that his refusal to testify was based on the ethical confidentiality requirements of the American Sociological Association to protect confidential information provided to him as a researcher. See American Sociological Associations Code of Ethics, Section on Confidentiality which states in part that, "Sociologists have an obligation to ensure the integrity of research and the open communication with research participants and to protect sensitive information obtained in research, teaching, practice and service." The ethics code stresses that this obligation extends even when "there is no legal protection or privilege to do so." (Code of Ethics, American Sociological Association, pp. 9-13)

Mr. DeMuth informed the government that as a graduate student under the direction of his faculty advisor, David Pellow, a Professor at the University of Minnesota,

Department of Sociology, he was doing research and interviews concerning animal rights and environmental groups. Mr. DeMuth's reason for not testifying was based on his belief that he had an obligation to keep any information that he obtained through interviews confidential and since he had no idea of the scope and nature of the grand jury's inquiry he felt obligated to refuse to participate in an open-ended inquiry. This refusal was also based in part on his research on the history of grand jury investigations into political groups and the abuse of the grand jury power to gather intelligence information about the activities and relationships between groups involved in First Amendment anti-government protest, and to intern political activists. See generally, Deutsch, "The Improper Use of the Federal Grand Jury: An Instrument of the Internment of Political Activists," 75 Journal of Criminal Law and Criminology at 1159, Northwestern School of Law (1984).

While the Court held Mr. DeMuth in civil contempt, apparently determining that his basis for refusal was not justified under the law, his refusal to testify is not probative evidence that he in fact had information of illegal animal rights actions or was trying to protect co-conspirators. The introduction of Mr. DeMuth's act of civil disobedience would be highly prejudicial as it would improperly suggest to the jury that he was covering up the wrong doing of others and was involved with or had knowledge of criminal activity that he has refused to divulge. This Court should not permit this highly prejudicial speculative evidence to be submitted to the jury.

<div style="margin-left: 50%;">

Respectfully submitted,

</div>

Dated:  August 5, 2010

<div style="margin-left: 50%;">

/s/ Michael E. Deutsch
Michael E. Deutsch
Attorney at Law
1180 N. Milwaukee

</div>

Chicago, IL 60642
773-235-0070


To: Clifford R. Cronk III
    U.S. Attorney's Office

Please take notice that, counsel for Scott DeMuth electronically filed on August 5, 2010, Motions in Limine.

/s/ Michael E. Deutsch
Michael E. Deutsch