IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:09-cr-0117-JAJ |
| | ) | |
| SCOTT RYAN DEMUTH | ) | MOTION IN LIMINE TO |
| | | EXCLUDE EXPERT TESTIMONY |

Scott DeMuth, by his undersigned counsel and moves to exclude the expert

testimony of Richard W. Vorder Bruegge as it pertains to his testimony as to the

approximate height of three masked individuals depicted on a video of the Spence Lab

break-in allegedly created by perpetrators of the crime. In support of this motion the

defendant states the following:

1. On August 25, 2010, the government pursuant to its obligations under Rule

   16, notified defense by letter of its intent to elicit expert testimony from an

   FBI employee, Ricard W. Vorder Brugge, as to the approximate heights of

   three figures depicted in a video of the Spence Lab break-in.

2. Specifically, the letter notice as to the height opinion provided by the

   government agent states the following:

   > The examiner identified three different individuals on the recordings and
   > identified them as subjects "A", "B", "C". The examiner noted differences
   > in footwear worn by each of the three individuals as well as other items of
   > clothing, headgear and a back pack. The examiner used a technique called
   > "Reverse Projection Photogrammetry." This technique reconstructs the

1

scene and overlays a height chart around the scene. The examiner returned
to the scene and reconstructed camera angles
using a similar camera as the one used to make the video recordings.
Using this method he has reached an opinion about the heights of the three
subjects. The examiner determined that the height of Subject "A" is
approximately 5' 9½" tall, Subject "B" is approximately 5' 6½" tall, and
Subject "C" is approximately 5' 11¾" tall.

(Prosecutor Letter of 8/25/10)

3.   In a prior lab report the same government agent/expert also stated as to

Subject B that, "[d]ue to uncertainties in the posture and precise location

of Subject 'B' in the selected image, as well as uncertainty introduced by

his footwear and headwear, the actual barefoot height of Subject 'B' may

differ somewhat from 5'-6-1/2"   (See FBI report attached as Exhibit  A)

4.   The admissibility of expert evidence is governed by Fed. R. 702 and

the requirements have been established by the Supreme Court in *Daubert*

*v. Merrell Dow Pharms Inc.*, 509 U.S. 579 (1993); see also *Lanzon v.*

*Seneca Prod.*, 270 F. 3d  681 (8th Cir 2001).

5.   *Daubert* requires that a district court exercise a "gatekeeper"

function to ensure that the expert testimony is both reliable and relevant.

*Daubert* mandates that before admitting scientific expert testimony, the

court must conclude, pursuant to Federal Rule of Evidence 104(a) that the

proposed testimony constitutes (1) scientific knowledge that (2) will assist

the trier of fact to understand or determine a fact in issue.

6   In explaining the requirement that the expert testimony assist the

trier of fact, the Court in *Daubert* opined that this condition is primarily

one of relevance. In order to satisfy this requirement the Supreme Court in

Daubert held that the proposed scientific testimony must assist or be helpful to the jury and the proponent of the evidence must demonstrate that the evidence bears "a valid scientific connection to the pertinent inquiry."; see also *Lanzon v. Seneca Prod.*, 270 F. 3d 681, 694-695 (8th Cir 2001) ( whether the opinion offered by the expert is sufficiently related to the facts of the case such that it will aid the jury in resolving the factual dispute); *United States v. Martinez*, 3 F.3d 1191 (8th Cir. 1993) .

7.     Here the government wants to elicit expert testimony based on "a technique known as Reverse Projection Photogrammetry" to approximate the height of three figures depicted in a copy of video filmed by perpetrators of the break-in at the Spence Lab.

8.     The expert opinion offered here is not based on an examination of the original video, nor does the expert know for certain the make and model of the camera used in making the video. Further there is no showing that the science of "reverse projection photogrammetry" which is referred by the expert as a technique has even been peer reviewed, that the opinion of the expert is based on sufficient facts or data, and reliable principles and methods.  Nor has the government provided evidence of the potential rate of error of this procedure or whether this technique has been generally accepted.

9.     Most significantly, at the end of the day, the experts opinion as to Subject "B" (the one who is closest in height to Scott DeMuth) is "approximately 5'61/2" tall.  In his lab report the expert further explains

why this opinion is only an approximation: "Due to uncertainties in the posture and precise location of Subject 'B' in the selected image, as well as uncertainty introduced by his footwear and headwear, the actual barefoot height of Subject 'B' may differ somewhat from 5'-6-1/2"

10.   Assuming that the "uncertainties" create a one inch differentiation on either side of the approximation, the expert will be testifying that subject "B" in the video is between 5'5 ½" and 5'7-1/2."

11.   Since the expert or no one else can testify whether the subject "B" is a man or a woman, the proposed height approximation would fit literally millions of adults.

12.   Under even the most liberal of interpretations, there is no way that such testimony can assist the trier of fact or aid the jury in resolving the factual dispute i.e whether one of people depicted in the video is Scott DeMuth.  In fact, the approximation of Subject "B's" height, without any other evidence that Scott DeMuth was present at Spence Labs, simply is not relevant and will only lead to gross speculation by the jury that subject "B" who is around the height of Scott DeMuth is Scott DeMuth.

13. The jury will have the opportunity to view the video and decide for themselves.  In that regard the video speaks for itself and does not need any expert to speculate about the height of the people depicted therein.  If there is anything about any of the figures depicted in the video which

supports the government's apparent claim[1] that Scott DeMuth was one of the people who broke into Spence Labs, the jury can determine that on their own.

Wherefore, this Court must hold a hearing pursuant to *Daubert v. Merrill* to determine whether the government's proposed expert testimony as to height approximation from a copy of a video is both reliable scientific evidence and relevant to assist the trier of fact to understand or determine a fact in issue; and following such hearing the defendants prays that this Court  preclude the government from presenting such evidence.

Dated: August 26, 2010

/s/ Michael E. Deutsch
Michael E. Deutsch
Attorney at Law
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070

To: Clifford R. Cronk III
    U.S. Attorney's Office

Please take notice that, counsel for Scott Demuth electronically filed on August 26, 2010, A Motion in Limine on behalf of defendant Scott Demuth.

/s/Michael E. Deutsch
Michael E. Deutsch
Attorney for Scott Demuth
1180 N. Milwaukee Ave.
Chicago Illinois, 60622
773-235-0070

---

[1] The indictment does not charge that Scott DeMuth was one of the people who broke into Spence Lab, not has it provided any evidence of any claim in its answer to the Bill of Particulars that Scott DeMuth was involved in the break-in.