IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>SCOTT RYAN DEMUTH,<br><br>    Defendant. | No. 3:09-cr-00117-JAJ<br><br><br><br>**ORDER** |

Demuth moves to dismiss the Second Superseding Indictment ("Indictment") on the grounds that it is vague [Dkt. 122]. The government has filed a resistance [Dkt. 130]. Demuth also filed a related unresisted motion for a bill of particulars [Dkt. 121], which the magistrate judge[1] granted [Dkt. 125]. The government subsequently provided a bill of particulars [Dkt. 131]. Demuth has also moved for leave to notify the court of additional authority in support of his motion to dismiss [Dkt. 133].

## I. INTRODUCTION

Demuth says the Indictment charges him with a conspiracy but does not sufficiently inform him about:

- the statute under which he is charged;
- the objects of the conspiracy, as the Indictment charges conspiracy to disrupt Spence Lab and Lakeside Ferrets, and unspecified "other animal enterprises elsewhere";
- the end date of the conspiracy, as the Indictment charges a conspiracy continuing "to a date unknown but at least until on or about May 2, 2006"; and
- the actions defendant is alleged to have taken that constitute his joining the conspiracy.

Pursuant to the Indictment, Demuth argues, the prosecution is free to offer evidence of

---

[1] The Honorable Thomas J. Shields, Magistrate Judge for the Southern District of Iowa.

hundreds of acts of disruption without prior notice of time, date, and place against unspecified animal enterprises. In these circumstances, Demuth says, he is unable to prepare a defense. He also argues that he is not protected from double jeopardy, unable to file a statute of limitations challenge, and unable to bring a facial challenge to the statute under the First Amendment.

## II. ANALYSIS

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ... " Russell v. United States, 369 U.S. 749, 761 (1962) (quoting U.S. CONST. amend. VI). Also, "due process requires that the indictment give a defendant notice of each element of the charge against him so that he can prepare an adequate defense." United States v. Becton, 751 F.2d 250, 256 (8th Cir. 1984). "The indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged". FED. R. CRIM. P. 7(c)(1).

"An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009) (citation omitted). "Furthermore, an indictment is normally sufficient if its language tracks the statutory language." Id. (citation, quotation, and brackets omitted). "[T]he language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hamling, 418 U.S. 87, 117-18 (1974) (quoting United States v. Hess, 124 U.S. 483, 487 (1888)).

"In addition to serving a notice function, the indictment must also be sufficiently specific to ensure that the subsequent prosecution is based upon facts presented to the grand

jury, a concern grounded in the Fifth Amendment." United States v. Buddenberg, Slip Copy, 2010 WL 2735547, *2 (N.D. Cal. July 12, 2010) (citing Russell, 369 U.S. at 760). "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." Russell, 369 U.S. at 770.

**A. Whether the Indictment contains all of the essential elements of the offense charged**

Here, the Indictment charges:

Count 1 (Conspiracy): From a date unknown to the grand jury, but beginning as early as September of 2004, and continuing to a date unknown but at least until on or about May 2, 2006, the exact dates unknown, in and about Johnson County in the Southern District of Iowa, and elsewhere, defendant, SCOTT RYAN DEMUTH, did knowingly and intentionally conspire with persons known and unknown to the Grand Jury to travel in interstate and foreign commerce, and use and cause to be used the mail and other facilities in interstate or foreign commerce, including the internet and electronic mail, for the purpose of causing and attempting to cause, physical disruption to the functioning of animal enterprises, including, but not limited to, the Spence Laboratories at the University of Iowa, and Lakeside Ferrets, Inc. in Minnesota, and other animal enterprises elsewhere, to intentionally damage and cause the loss of property, including, but not limited to, animals, computers, and records, used by the animal enterprises, and cause economic damage to the animal enterprises in an amount exceeding $10,000.

This is a violation of Title 18, United States Code, Sections 43(a) and 43(b)(2).

Indictment [Dkt. 93]. The essential elements of the crime charged here, a conspiracy to violate the Animal Enterprise Protection Act ("AEPA"),[2] are: "(1) that the Defendants

---

[2] Demuth argues that the Indictment is so vague that he does not know if he is charged under the 2006 Animal Enterprise Terrorism Act or the earlier 2002 Animal Enterprise Protection Act, and this renders him unable to bring a facial challenge to the statute. But the language of the Indictment clearly tracks the language of the statute from 2002. Compare Indictment [Dkt. 93] with 18 U.S.C. § 43(a) (2002).

conspired, that is, they agreed with one another and/or with others; (2) to use a facility in interstate or foreign commerce; (3) for the purpose of causing physical disruption to the functioning of [the animal enterprise]; and (4) to intentionally damage or cause the loss of property to [the animal enterprise]." United States v. Fullmer, 584 F.3d 132, 160 (3rd Cir. 2009) (citing 18 U.S.C. § 43(a) (2002)).  It is manifestly clear that here the Indictment contains all the essential elements of the crime charged.  The question, then, is only whether it fairly informs Demuth of the charges against which he must defend and whether he could plead an acquittal or conviction as a bar to subsequent prosecution.

**B. Whether the Indictment fairly informs Demuth of the charges against which he must defend**

Demuth asserts that the Indictment fails to inform him of the charges against which he must defend in a number of ways.  The court will consider each challenge in turn.

1. The objects of the conspiracy

Demuth argues that the Indictment is vague because it does not identify the objects of the alleged conspiracy.  Demuth notes that the Indictment charges that he conspired to disrupt the functioning of Spence Laboratories, Lakeside Ferrets, Inc., "and other animal enterprises elsewhere", without specifying what these other animal enterprises are.  In this situation, Demuth argues, "the prosecution is potentially free to put in evidence of hundreds of acts of disruption without prior notice of time, date, and place against yet unspecified animal enterprises."  Demuth's Motion to Dismiss [Dkt. 122], ¶ 7.  Indeed, in its bill of particulars, the government identified numerous other animal enterprises alleged in the Indictment as "elsewhere" [Dkt. 131, ¶ C].

But the government also stated it only intends to offer evidence that Demuth was involved in the two alleged disruptions of the specific locations listed in the Indictment [Dkt. 131, ¶ C].  Demuth has since filed a motion in limine asking the court to exclude evidence

of any alleged disruptions other animal enterprises not listed in the Indictment [Dkt. 142]. The court will grant that motion and thus resolve Demuth's concern that the trial will involve evidence of unspecified animal enterprises "elsewhere".

The court is aware that the bill of particulars cannot save an insufficient indictment. See Russell, 369 U.S. at 769-70. But the court's instant resolution by reference to the government's bill of particulars and granting Demuth's motion in limine does not run afoul of this rule. The rule is designed to ensure that the defendant is not "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Russell, 369 U.S. at 770. A trial involving evidence only about the two specific locations included on the face of the Indictment – Spence Labs and Lakeside Ferrets – will necessarily preclude conviction on any facts not found by the grand jury.

2. The time of the conspiracy

The Indictment alleges Demuth's participation in a criminal conspiracy "[f]rom a date unknown to the grand jury, but beginning as early as September of 2004, and continuing to a date unknown but at least until on or about May 2, 2006, the exact dates unknown" [Dkt. 93]. Demuth says that he cannot prepare a defense when the Indictment does not include specific beginning and ending dates for the conspiracy.

The government responds that "[t]he indictment sets forth with specificity the time period of the conspiracy: between September of 2004 and May of 2006." Government Response [Dkt. 130, at 6 of 7]. Regarding the beginning date of the conspiracy, the government says in its bill of particulars that it will present no direct evidence establishing the date, week, or month that Demuth joined the conspiracy, but will present evidence that he joined it prior to the alleged Spence Labs break-in [Dkt. 131, at 9 of 10]. Regarding the end of the conspiracy, the government indicates that it intends to present evidence that the conspiracy lasted at least until May 2, 2006 [Dkt. 131, at 8 of 10].

While the bill of particulars cannot save the Indictment, the one here specifies the time

frame of the conspiracy as "between September of 2004 and May of 2006", without the open-endedness on both ends present on the face of the Indictment, and thus it should certainly assist Demuth in preparing his defense. The court will exclude evidence concerning any alleged participation in a conspiracy by Demuth before September 2004 or after May 2006. The question then becomes whether the Indictment itself is so insufficient with regard to the time of the conspiracy that it should be dismissed for vagueness.

The Eighth Circuit has indicated its willingness to uphold an indictment "[d]espite the lack of specificity concerning the exact dates of the conspiracy". United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001). In White, the Eighth Circuit upheld an indictment charging a conspiracy "[b]eginning at unknown time, but not later than March, 1996, and continuing through October, 1996". Id. There the indictment alleged a specific ending date, while here, the ending date on the face of the Indictment is "at least until on or about May 2, 2006, the exact dates unknown". Demuth cites United States v. Cecil, 608 F.2d 1294 (9th Cir. 1979), for the proposition that the Indictment here – one alleging a conspiracy without specific beginning and ending dates – must be vague. In Cecil, the indictment alleged a drug conspiracy "beginning on or before July, 1975, and continuing thereafter until on or after October, 1975". Cecil, 608 F.2d at 1297. The Ninth Circuit found this language to be "open-ended in both directions", and said the indictment "fails to place the conspiracies within any time frame." Id.

The Ninth Circuit's decision in Cecil suggests that the Indictment may be vague with respect to the time of the offense.[3] However, the indictment in Cecil was dismissed because it was, unlike the Indictment here, deficient on numerous levels. See Cecil, 608 F.2d at 1297 ("[o]ur decision is predicated upon the absence of any factual particularity within the

---

[3] While under the reasoning of the Third and Ninth Circuits in United States v. Rawlins, 606 F.3d 73, 79 (3d Cir. 2010) and United States v. Forrester, 592 F.3d 972, 983 (9th Cir. 2010), the Indictment is probably "open-ended in both directions", the Ninth Circuit has also shown a willingness to uphold an indictment listing an inexact ending date for a conspiracy. See United States v. Rohrer, 708 F.2d 429, 435 n.7 (9th Cir. 1983) (indictment that alleged a conspiracy extending until "at least 1980" was sufficiently specific).

6

indictment"). More importantly, the approximate beginning and ending dates given in the Indictment, coupled with the court's exclusion of evidence outside of those dates, will ensure that Demuth is not prejudiced by any vagueness in this Indictment.[4] Dismissal, then, is not appropriate. United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001) ("[a]bsent an actual or substantial threat of prejudice dismissal is inappropriate for Fifth or Sixth Amendment violations"); see also United States v. Coombs, 26 Fed.Appx. 198, 201 (4th Cir. 2002) (finding indictment sufficient where defendants failed to show how they were prejudiced in presenting their defense as a result of the dates listed in the indictment); United States v. Steele, 178 F.3d 1230, 1234 (11th Cir. 1999) (it is "hornbook law that great generality in the allegation of date is allowed – at least where, as here, the exact time of the crime's commission is not important under the statute allegedly violated") (citing cases).

3. The actions Demuth is alleged to have taken that constitute his joining of the conspiracy

Demuth argues that the Indictment improperly fails to give him notice of the actions he is alleged to have taken that would constitute his joining of the conspiracy. Because of this, Demuth argues, he cannot tell from the Indictment if the claim that he agreed to join a conspiracy to violate the statute is based on his exercise of his First Amendment-protected speech and associations, and thus is unable to challenge the statute as applied to him.

The district court for the Northern District of California recently dismissed an indictment under the successor statute to the AEPA. See United States v. Buddenberg, Slip Copy, 2010 WL 2735547 (N.D. Cal. July 12, 2010). The defendants there were indicted for allegedly placing people in fear for the purpose of interfering with an animal enterprise. See id. at *3. The defendants, pointing to the bill of particulars, argued that they were being prosecuted at least in part for speech and expressive conduct in the course of public demonstrations and leafleting. Id. at *4. The district court said, "[i]n such a challenge, the

---

[4] The court will exclude evidence outside those dates of not only Demuth's alleged joining of the conspiracy, but also of the conspiracy itself.

court must examine the speech and expressive conduct at issue, but that examination cannot occur unless the specific speech and conduct is identified," id., and found the indictment insufficient. Here, the bill of particulars indicates that part of the evidence against Demuth is his alleged fund-raising activities in 2005 for the Animal Liberation Front, an organization apparently dedicated to criminal activity against animal enterprises. The government also indicates its intent to rely on evidence of Demuth's possession of animal rights materials advocating "direct action" – apparently, invasion of animal enterprises, release of animals, and property damage – to prove his intent to join the conspiracy.

Demuth, then, has identified some of his activities relevant to this case that he claims are protected by the First Amendment.[5] However, unlike in Buddenberg, he is not being prosecuted for those activities. The defendants in Buddenberg were prosecuted specifically for their behavior which consisted of speech and expressive conduct in the course of public demonstrations and leafleting. Here, by contrast, Demuth is being prosecuted for an unlawful agreement to commit clearly criminal and unprotected activity – intentionally damaging and causing the loss of property to animal enterprises. Some of the circumstantial evidence that the government intends to use to prove his intent to join that unlawful agreement constitutes potentially First Amendment-protected activity, but this is not the same as being prosecuted for potentially First Amendment-protected activity. The Third Circuit has recently drawn this exact distinction, stating that where a defendant's conduct is protected, "to punish him simply on the basis of his political speeches would run afoul of the constitution. However, his conduct ... does provide circumstantial evidence from which a jury could have reasonably inferred that [the defendant] was involved in a conspiracy to violate the AEPA." United States v. Fullmer, 584 F.3d 132, 158 (3d Cir. 2009) (citing

---

[5] Without evidence yet before it, the court cannot engage in the analysis of whether these activities are protected, as undertaken in United States v. Fullmer, 584 F.3d 132, 154-56 (3d Cir. 2009), under the holding of Brandenburg v. Ohio, 395 U.S. 444 (1969). The activities identified may be protected, but they are not if "the speech (1) invited *imminent* lawlessness and (2) the [] imminent lawlessness was *likely* to occur." Fullmer, 584 F.3d at 154 (discussing Brandenburg, 395 U.S. at 447-48) (emphasis original).

8

Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993)).  Indeed, "[t]he First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."  Mitchell, 508 U.S. at 489.

     Moreover, in Buddenberg the indictment did not identify the alleged victim.  "No target person [was] identified."  Buddenberg, 2010 WL 2735547 at *8.  By contrast, here, the two alleged victims are specifically identified as Spence Labs and Lakeside Ferrets.  The court's concern in Buddenberg was "magnified by the breadth of both the statute and the allegations of the indictment", as the indictment alleged several different types of conduct, including "threats, acts of vandalism, property damage, criminal trespass, harassment, and intimidation," targeted against "five sets of victims", by four defendants, involving eight separate incidents.  Id. at *9.  With such a broad range of conduct alleged without more specific facts alleged in the indictment, "there is little to ensure that if a conviction is ultimately obtained, it was obtained based on the same facts on which the grand jury returned its indictment."  Id.  By contrast, here, the Indictment alleges only a conspiracy to commit a limited type of conduct, namely – to "intentionally damage and cause the loss of property, including, but not limited to, animals, computers, and records ... and cause economic damage".  Instead of five sets of unnamed victims, the Indictment here names two specific victims.  There is only one defendant, and only two incidents are named.

     Of course, as noted above, "the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."  Hamling, 418 U.S. at 117-18 (quoting Hess, 124 U.S. at 487).  The Indictment here states facts and circumstances that inform Demuth of the specific offense, as it states the victims, time frame, and the nature of the conspiracy – namely, "to intentionally damage and cause the loss of property, including, but not limited to, animals, computers, and records ... and cause economic damage to the animal enterprises."  Indeed, this language is specific enough to satisfy the requirement that the

government "plead and prove that the alleged conspirators agreed to the same type of conduct." United States v. Treadwell, 760 F.2d 327, 337 (D.C. Cir. 1985).

But Demuth wants the Indictment to specifically list the actions he took to join the conspiracy. The government in its bill of particulars disclosed circumstantial evidence it intends to rely on in proving Demuth's participation in the conspiracy. Demuth provides no reason to require these specific pieces of evidence to be included in the Indictment. He "cites no authority holding that an indictment must describe these features." See United States v. Younes, 194 Fed.Appx. 302, 308 (6th Cir. 2006). Instead, many courts of appeal have held that "[a]lthough the indictment must allege the essential elements of the charged offense, it is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." United States v. Hoover, 467 F.3d 496, 500 (5th Cir. 2006) (citations omitted); see also United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (same) (citations omitted); United States v. Smith, 230 F.3d 300, 306 (7th Cir. 2000) (same) (citations omitted); United States v. Marrero-Ortiz, 160 F.3d 768, 773 (1st Cir. 1998) ("government need not recite all its evidence in the indictment") (citations omitted); United States v. Ely, 142 F.3d 1113, 1120 (9th Cir. 1997) (indictment providing essential facts necessary to apprise defendant of crime charged "need not specify the theories or evidence upon which the government will rely to prove those facts") (citation omitted).

In support of his argument, Demuth cites only the following language: "[a]lthough it is usual and often necessary in conspiracy cases for the agreement to be proved by inference from acts, the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant." United States v. Borelli, 336 F.2d 376, 384 (2d Cir. 1964). First, the nature of the agreement alleged is clear from this Indictment – it is an agreement to damage and cause the loss of property, including animals, computers and records, used by Spence Labs and Lakeside Ferrets. Second, the court in Borelli was discussing not the requirements of indictments but the substantive law of conspiracy.

The Indictment is not insufficient for failure to allege specific actions Demuth took in joining the conspiracy.

### C. Whether the Indictment alleges sufficient information to allow Demuth to plead a conviction or acquittal as a bar to subsequent prosecution

Demuth argues that any acquittal or conviction under the Indictment would not necessarily act as a bar to subsequent prosecution on a slightly reframed conspiracy because the Indictment is so vague as to the nature of the conspiracy and Demuth's alleged involvement in it. The accused must be apprised by the indictment of the nature of the accusation against him, in part so he may "plead the judgment as a bar to any subsequent prosecution for the same offense." United States v. Hess, 124 U.S. 483, 488 (1888).

The Indictment here is sufficiently specific to allow Demuth to plead a judgment as a bar to future prosecutions, especially given that he "could rely upon other parts of the ... record in the event that future proceedings should be taken against [him]." Russell, 369 U.S. at 764 (citations omitted). The Indictment, in conjunction with the government's bill of particulars, provides a reasonably short time period. The indictment itself specifies the exact alleged victims. In doing so, the indictment provides a sufficient bar to subsequent suits. The government could not again charge Demuth with conspiring to intentionally damage and cause the loss of animals, computers, and records used by Spence Labs and Lakeside Ferrets between September of 2004 and May 2, 2006.

### III. CONCLUSION

Because the Indictment tracks the language of the conspiracy statute, identifies the federal criminal law that is the subject of the conspiracy, alleges each of the essential elements of the crime of conspiracy, states the nature of the animal enterprise disruption that was the subject of the conspiracy, and specifies the approximate time period during which the conspiracy took place, the Indictment is sufficient. Accord Hayes, 574 F.3d at 473 (citation omitted) (citing many similar factors in finding the indictment sufficient).

Demuth's motion for leave to file additional authority in support of the motion to dismiss [Dkt. 133] is granted.  Demuth's motion to dismiss the Indictment [Dkt. 122] is denied.

**IT IS SO ORDERED.**

**DATED** this 9th day of September, 2010.

_____
JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA